# EXHIBIT "B"



# Miscellaneous errors and omissions

Markel has over 35 years of experience providing miscellaneous errors and omissions insurance. Our leadership has a wealth of knowledge and expertise in protecting small business owners from litigation stemming from actual or perceived negligence. Our underwriting team has crafted policies that fit your specific needs, while our seasoned, in-house claims professionals will help you successfully navigate a loss or claim should you need their assistance.

## Reporting new professional liability claims

New Claims can be reported in writing by website, email, fax, or regular mail. Please refer to your specific policy for all relevant reporting requirements.

To report a new claim, visit **markelinsurance.com/file-a-claim** and select "BOP/Miscellaneous errors and omissions/Workers compensation" from the drop down. You can also email **newclaims@markelcorp.com** and include the following:

- Policy number
- Insured and claimant names with contact details
- Date of loss
- Location and description of loss
- All pertinent documentation available (incident report, police report, witness information, photos, etc.)

## General claims questions

For information about an already reported Professional Liability claim, email: **markelclaims@markelcorp.com**, or contact your assigned claim examiner directly.
Additional contact information:

    (800) 362-7535 or (800) 3 MARKEL

    (855) 662-7535 or (855) 6 MARKEL

    Markel Claims Department, P.O. Box 2009,
    Glen Allen, VA 23058-2009

While your policy is primarily designed to protect against a variety of professional errors and omissions claims, it may also provide protection for other specific exposures such as pollution claims, disciplinary proceedings, third party discrimination claims, subpoena and public relations expenses, among others. Contact your agent for more information, or if you have reported a Claim, your assigned examiner.

## Risk management and loss prevention

Policyholders have access to loss control and risk management resources that can assist in a better understanding of potential hazards within their operation and ways to reduce claims.

Here's a sample of the many services available:

- Exposure assessments
- Loss analysis tools
- Safety videos
- Safety training materials
- Regulatory program guidance

## Designed Protection® for professional service providers and associations – professional service providers hotline

Our panel of Risk Management experts is available to discuss general risk management related concerns and questions. Please visit **markelcorp.com/riskmanagement** and under "Designed Protection®" click "Click here," enter your policy number, then select "Professional Service Providers Hotline" to access our panel of experts.

Visit our website at:
**markelinsurance.com/risk-management-home**.

For more information about any of Markel's loss control services, contact us at (888) 500-3344 or email **losscontrol@markelcorp.com**.

For more information about our programs, risk management articles, and FAQs, please visit **markelinsurance.com**. To pay your bill or view policy documents, please visit **portal.markelinsurance.com**.



Products and services are offered through Markel Specialty, a business division of Markel Service Incorporated. Policies are written by one or more Markel insurance companies. Terms and conditions for rate and coverage may vary. 201806

**A STOCK COMPANY**



## MARKEL INSURANCE COMPANY

10275 West Higgins Road, Suite 750
Rosemont, IL 60018

**INSURANCE POLICY**

**Coverage afforded by this policy is provided by the Company (Insurer) and named in the Declarations.**

In **Witness Whereof**, the company (insurer) has caused this policy to be executed and attested and countersigned by a duly authorized representative of the company (insurer) identified in the Declarations.

_____
**Secretary**

_____
**President**



# MARKEL INSURANCE COMPANY

## NOTICE TO POLICYHOLDERS
## CLAIM REPORTING

Please immediately report a new claim under this policy to:

**newclaims@markelcorp.com**

For general claims inquiries after a claim has been reported, please email:

**markelclaims@markelcorp.com**

In order for us to expedite the handling of your claim and quickly refer it to the appropriate party, please have the following information available:

- Claim number (or report as new)
- Your name, contact information and position with the Named Insured
- Date of loss
- Policy number and insured name
- Details of loss

Our address and additional contact information are as follows:

Markel Claims
P.O. Box 2009
Glen Allen, VA 23058-2009
Phone:  800-362-7535 (800) 3MARKEL
Fax:  855-662-7535 (855) 6MARKEL

Markel understands the importance of having knowledgeable claims professionals prepared to answer your questions with personal attention and expertise. With claims professionals located across four times zones, you are sure to find the claims assistance you need -- when you need it.

**PLEASE REFER TO THE POLICY FOR ANY NOTICE AND REPORTING PROVISIONS AND DUTIES IN THE EVENT OF LOSS OR DAMAGE TO COVERED PROPERTY.**



# MARKEL INSURANCE COMPANY

## PRIVACY NOTICE

U. S. Consumer Privacy Notice

Rev. 1/1/2020

| FACTS | WHAT DOES MARKEL GROUP OF COMPANIES REFERENCED BELOW (INDIVIDUALLY OR COLLECTIVELY REFERRED TO AS "WE", "US", OR "OUR") DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | In the course of Our business relationship with you, We collect information about you that is necessary to provide you with Our products and services. We treat this information as confidential and recognize the importance of protecting it. Federal and state law gives you the right to limit some but not all sharing of your personal information. Federal and state law also requires Us to tell you how We collect, share, and protect your personal information. Please read this notice carefully to understand what We do. |
| What? | The types of personal information We collect and share depend on the product or service you have with Us. This information can include:<br><br>• your name, mailing and email address(es), telephone number, date of birth, gender, marital or family status, identification numbers issued by government bodies or agencies (i.e.: Social Security number or FEIN, driver's license or other license number), employment, education, occupation, or assets and income from applications and other forms from you, your employer and others;<br><br>• your policy coverage, claims, premiums, and payment history from your dealings with Us, Our Affiliates, or others;<br><br>• your financial history from other insurance companies, financial organizations, or consumer reporting agencies, including but not limited to payment card numbers, bank account or other financial account numbers and account details, credit history and credit scores, assets and income and other financial information, or your medical history and records.<br><br>Personal information does not include:<br><br>• publicly-available information from government records;<br><br>• de-identified or aggregated consumer information.<br><br>When you are no longer Our customer, We continue to share your information as described in this Notice as required by law. |
| How? | All insurance companies need to share customers' personal information to run their everyday business. In the section below, We list the reasons financial companies can share their customers' personal information; the reasons We choose to share; and whether you can limit this sharing. We restrict access to your personal information to those individuals, such as Our employees and agents, who provide you with insurance products and services. We may disclose your personal information to Our Affiliates and Nonaffiliates (1) to process your transaction with Us, for instance, to determine eligibility for coverage, to process claims, or to prevent fraud, or (2) with your written authorization, or (3) otherwise as permitted by law. We do not disclose any of your personal information, as Our customer or former customer, except as described in this Notice. |

| Reasons We can share your personal information | Do We share? | Can you limit this sharing? |
|---|---|---|
| **For Our everyday business purposes and as required by law –** such as to process your transactions, maintain your account(s), respond to court orders and legal/regulatory investigations, to prevent fraud, or report to credit bureaus | Yes | No |
| **For Our marketing purposes –** to offer Our products and services to you | Yes | No |
| **For Joint Marketing with other financial companies** | Yes | No |
| **For Our Affiliates' everyday business purposes –** information about your transactions and experiences | Yes | No |
| **For Our Affiliates' everyday business purposes –** information about your creditworthiness | No | We don't share |
| **For Our Affiliates to market you** | No | We don't share |
| **For Nonaffiliates to market you** | No | We don't share |
| **Questions?** Call (888) 560-4671 or email privacy@markel.com | | |

| Who We are | |
|---|---|
| **Who is providing this Notice?** | A list of Our companies is located at the end of this Notice. |

| What We do | |
|---|---|
| **How do We protect your personal information?** | We maintain reasonable physical, electronic, and procedural safeguards to protect your personal information and to comply with applicable regulatory standards. For more information, visit www.markel.com/privacy-policy. |
| **How do We collect your personal information?** | We collect your personal information, for example, when you complete an application or other form for insurance perform transactions with Us, Our Affiliates, or others file an insurance claim or provide account information use your credit or debit card We also collect your personal information from others, such as consumer reporting agencies that provide Us with information such as credit information, driving records, and claim histories. |
| **Why can't you limit all sharing of your personal information?** | Federal law gives you the right to limit only sharing for Affiliates' everyday business purposes – information about your creditworthiness Affiliates from using your information to market to you sharing for Nonaffiliates to market to you State laws and individual companies may give you additional rights to limit sharing. See the Other Important Information section of this Notice for more on your rights under state law. |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies. <br><br> • Our Affiliates include member companies of Markel Group. |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies. <br><br> • Nonaffiliates that We can share with can include financial services companies such as insurance agencies or brokers, claims adjusters, reinsurers, and auditors, state insurance officials, law enforcement, and others as permitted by law. |
| **Joint Marketing** | A formal agreement between Nonaffiliated companies that together market financial products or services to you. <br><br> • Our Joint Marketing providers can include entities providing a service or product that could allow Us to provide a broader selection of insurance products to you. |

| Other Important Information |
|---|
| **For Residents of AZ, CT, GA, IL, ME, MA, MN, MT, NV, NJ, NC, OH, OR, and VA:** Under state law, under certain circumstances you have the right to access and request correction, amendment or deletion of personal information that We have collected from or about you. To do so, contact your agent, visit www.markel.com/privacy-policy, call (888) 560-4671, or write to Markel Corporation Privacy Office, 4521 Highwoods Parkway, Glen Allen, VA 23060. <br><br> We may charge a reasonable fee to cover the costs of providing this information. We will let you know what actions We take. If you do not agree with Our actions, you may send Us a statement. |
| **For Residents of CA:** You have the right to review, make corrections, or delete your recorded personal information contained in Our files. To do so, contact your agent, visit www.markel.com/privacy-policy, call (888) 560-4671, or write to Markel Corporation Privacy Office, 4521 Highwoods Parkway, Glen Allen, VA 23060. We do not and will not sell your personal information. <br><br> For the categories of personal information We have collected from consumers within the last 12 months, please visit: www.markel.com/privacy-policy. |
| **For Residents of MA and ME:** You may ask, in writing, for specific reason, for an adverse underwriting decision. |
| **Markel Group of Companies Providing This Notice:** City National Insurance Company, Essentia Insurance Company, Evanston Insurance Company, FirstComp Insurance Company, Independent Specialty Insurance Company, National Specialty Insurance Company, Markel Bermuda Limited, Markel American Insurance Company, Markel Global Reinsurance Company, Markel Insurance Company, Markel International Insurance Company Limited, Markel Service, Incorporated, Markel West, Inc. (d/b/a in CA as Markel West Insurance Services), Pinnacle National Insurance Company, State National Insurance Company, Inc., Superior Specialty Insurance Company, SureTec Agency Services, Inc. (d/b/a in CA as SureTec Agency Insurance Services), SureTec Indemnity Company, SureTec Insurance Company, United Specialty Insurance Company, Inc. |



# MARKEL INSURANCE COMPANY

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;

- Front organizations;

- Terrorists;

- Terrorist organizations; and

- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – https://www.treasury.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



**Markel Insurance Company**

## PROFESSIONAL LIABILITY INSURANCE DECLARATIONS

**Claims Made and Reported Coverage:** The coverage afforded by this policy is limited to liability for only those **Claims** that are first made against the **Insured** during the **Policy Period** or the Extended Reporting Period, if exercised, and reported to Markel Insurance Company during the **Policy Period** or the Extended Reporting Period, if exercised, or within 60 days after the expiration of the **Policy Period** or the Extended Reporting Period, if exercised.

**Notice:** This policy contains provisions that reduce the Limits of Liability stated in the policy by the costs of legal defense and permit legal defense costs to be applied against the deductible, unless the policy is amended by endorsement. Please read the policy carefully.

POLICY NUMBER: MEO1290-03                              RENEWAL OF POLICY: MEO1290-02

NAMED INSURED: Slate Consulting, LLC
BUSINESS ADDRESS:  2983 US Hwy 84 Dixie, GA  31629
POLICY PERIOD:        From 07/19/2021 to 07/19/2022
                      12:01 A.M. Standard Time at address of Insured stated above.

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANY AGREES WITH THE NAMED INSURED TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

1.  **PROFESSIONAL SERVICES:** Advising customers in planting citrus plants and providing contacts.

2.  **LIMITS OF LIABILITY**

    **Professional Liability Coverage**

    **A.**  Each Claim:                                      $1,000,000

    **B.**  Policy Aggregate:                                $1,000,000

    **Additional Payments**

    **A.**  Contingent Bodily Injury And Property Damage     $100,000

    **B.**  Pollution                                        $10,000

    **C.**  Pre-Claim Assistance Expenses                    $20,000

    **D.**  Sexual Abuse                                     $10,000

    **E.**  Third Party Discrimination                       $25,000

    **Supplementary Payments**

    **A.**  Disciplinary Proceeding                          $25,000 per Policy Period

    **B.**  Loss Of Earnings And Expense Reimbursement       $10,000

    **C.**  Public Relations Expenses                        $5,000

    **D.**  Subpoena And Record Request Assistance           $5,000

| Producer Number, Name and Mailing Address |
| --- |
| 72489 |
| The Braddy Agency LLC DBA Caldwell & Langford |
| PO Box 2138 |
| Thomasville, GA, 31799 |

MDST 1000 07 17

3.  **DEDUCTIBLE**

    **A.** Each Claim:                                        $1,000

    **B.** Aggregate:                                           $3,000

4.  **RETROACTIVE DATE:** 07/19/2019

5.  **PREMIUM RATE:** ▉                        **PREMIUM BASE:** ▉

6.  **PREMIUM FOR POLICY PERIOD**

    Minimum:                                             ▉

    Deposit:                                             ▉

    Adjusted Annual Premium:                  ▉

7.  **PREMIUM PERCENTAGE FOR EXTENDED REPORTING PERIOD:** ▉

    **ADDITIONAL PERIOD:** ▉                    12 months; 24 months; 36 months;
    48 months; 60 months; 72 months

8.  **FORMS AND ENDORSEMENTS ATTACHED AT POLICY INCEPTION:**

        See MDIL 1001 attached.

**These declarations, together with the Coverage Form and any Endorsement(s), complete the above numbered policy.**

| Countersigned: 04/21/2021 | |
|---|---|
| (Date) | By: *John K Clark* |
| | ———————————————— |
| | Authorized Representative Signature |



**PROFESSIONAL LIABILITY**
POLICY NUMBER: MEO1290-03

# MARKEL INSURANCE COMPANY

## MARKEL'S DESIGNED PROTECTION®
## RISK MANAGEMENT RESOURCES FOR PROFESSIONALS

Welcome to Markel's Designed Protection® leading edge Risk Management Resources.

The following risk management resources are available exclusively to our policyholders at our website www.markelcorp.com/riskmanagement at no additional cost.

**HOW TO QUICKLY ACCESS RISK MANAGEMENT RESOURCES:**

Step 1.    Go onto our website, www.markelcorp.com/riskmanagement.

Step 2.    Select the Designed Protection services that apply to your policy, to get to the Login screen.

Step 3.    Review the disclaimer, enter your current policy number and click on the button below to access. Your policy number is: MEO1290-03

**Available Risk Management Resources include:**

**Designed Protection® Risk Management Telephone Hotline for Professional Service Providers**

This confidential telephone hotline is staffed by a panel of risk management experts that are available to answer general risk management questions.

**Designed Protection® for Professional Services Firms – Leading Edge Strategies for Effective Risk Management**

This Guide provides information about principles of effective risk management including client satisfaction, billing practices and prompt and effective action in the event of an error or omission.

**Top 10 Tips for Liability Loss Avoidance for Professional Services Providers**

A concise, bullet point summary of 10 liability risk avoidance strategies.

Please check our website regularly as additional resources are added throughout the year.

POLICY NUMBER: MEO1290-03



# MARKEL INSURANCE COMPANY

## FORMS SCHEDULE

| FORM NUMBER | FORM NAME |
|---|---|
| MJIL 1000 06 10 | Signature Page |
| MPIL 1074 07 14 | Policyholder Notice |
| MPIL 1007 01 20 | Privacy Notice |
| MPIL 1083 04 15 | U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
| MDST 1000 07 17 | Professional Liability Insurance Declarations |
| MPST 1000 08 18 | Markel's Designed Protection Risk Management Resources For Professionals |
| MST 0001 07 17 | Professional Liability Insurance Coverage Form |
| MEIL 5409 09 10 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| MIL 1214 09 17 | Trade or Economic Sanctions |
| MST 1404-GA 07 17 | Georgia Amendatory |

# Markel Insurance Company

## PROFESSIONAL LIABILITY INSURANCE COVERAGE FORM

**THIS IS A CLAIMS MADE AND REPORTED POLICY. THIS POLICY REQUIRES THAT A CLAIM BE MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR DURING THE EXTENDED REPORTING PERIOD, IF APPLICABLE, AND REPORTED TO THE COMPANY IN WRITING DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF APPLICABLE, BUT NO LATER THAN 60 DAYS AFTER THE DATE OF EXPIRATION OF THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF APPLICABLE. PLEASE READ IT CAREFULLY.**

**PLEASE NOTE THAT AMOUNTS INCURRED AS CLAIM EXPENSES WILL REDUCE THE LIMIT OF LIABILITY AVAILABLE AND WILL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.**

The Company, relying upon the statements in the **Application**, which is deemed incorporated into this Policy and forms a part hereof, and in consideration of the payment of the premium, agrees with the **Insured** as follows:

## SECTION I – THE INSURED

The word **Insured**, either in the singular or plural, means:

**A.** The Named Insured stated in the Declarations;

**B.** Any past or current principal, partner, officer, director, member, manager, employee, shareholder or **Independent Contractor** of the Named Insured stated in the Declarations solely while acting on behalf of the Named Insured and within the scope of their duties as such; and

**C.** The heirs, executors, administrators, assigns and legal representatives of each **Insured** in Paragraphs **A.** and **B.** in the event of death, incapacity or bankruptcy of such **Insured**, but only while acting within the scope of their duties as such on behalf of the Named Insured or the Named Insured's estate.

## SECTION II – INSURING AGREEMENTS

**A. Professional Liability Coverage**

The Company shall pay on behalf of the **Insured** all sums in excess of the Deductible stated in the Declarations, which the Insured becomes legally obligated to pay as **Damages** and **Claim Expenses** as a result of a **Claim** first made against the **Insured** and reported to the Company during the **Policy Period** or during the Extended Reporting Period, if applicable, but no later than 60 days after the expiration date of the **Policy Period** or Extended Reporting Period, if applicable, by reason of:

**1.** A **Wrongful Act**; or

**2.** A **Personal Injury**;

in the performance of **Professional Services** rendered or that should have been rendered by the **Insured** or by any person or organization for whose **Wrongful Act** or **Personal Injury** the **Insured** is legally responsible; provided:

**a.** The **Wrongful Act** or **Personal Injury** happens during the **Policy Period** or on or after the **Retroactive Date** and before the end of the **Policy Period**; and

**b.** Prior to the effective date of this Policy no **Insured** had any knowledge of such **Wrongful Act** or **Personal Injury**, or any fact, circumstance, situation or incident which would lead a reasonable person in that **Insured's** position to conclude that a **Claim** was likely.

**B.   Additional Payments**

**1.   Contingent Bodily Injury And Property Damage**

The Company shall pay **Contingent Bodily Injury And Property Damage** up to a limit of $100,000, or a higher limit if stated in the Declarations, per **Policy Period** including the Extended Reporting Period, if applicable, as the direct result of **Wrongful Acts** that occur during the **Policy Period**, provided:

**a.**   The **Contingent Bodily Injury And Property Damage** happens during the **Policy Period** or on or after the **Retroactive Date** and before the end of the **Policy Period**; and

**b.**   Prior to the effective date of this Policy no **Insured** had any knowledge of such **Wrongful Act**, or any fact, circumstance, situation or incident which would lead a reasonable person in that **Insured's** position to conclude that a **Claim** was likely.

No coverage for **Contingent Bodily Injury And Property Damage** is provided by this Policy except as provided by this Section **II** – Insuring Agreements, **B.** Additional Payments, **1.** Contingent Bodily Injury And Property Damage.

**2.   Pollution**

The Company shall pay those sums that the **Insured** becomes legally obligated to pay as compensatory damages for a **Pollution Incident** up to a limit of $10,000 per **Policy Period** including the Extended Reporting Period, if applicable, as the direct result of **Wrongful Acts** that occur during the **Policy Period**, provided:

**a.**   The **Pollution Incident** happens during the **Policy Period** or on or after the **Retroactive Date** and before the end of the **Policy Period**; and

**b.**   Prior to the effective date of this Policy no **Insured** had any knowledge of such **Pollution Incident**, or any fact, circumstance, situation or incident which would lead a reasonable person in that **Insured's** position to conclude that a **Claim** was likely.

No coverage for a **Pollution Incident** is provided by this Policy except as provided by this Section **II** – Insuring Agreements, **B.** Additional Payments, **2.** Pollution.

**3.   Pre-Claim Assistance Expenses**

If, during the **Policy Period** or the Extended Reporting Period, if applicable, the **Insured** provides the Company with written notice of a **Wrongful Act** or **Personal Injury** as provided in Section **VIII** – Claims Reporting And Notice, **B**. Discovery Of Potential Claims that is reasonably expected to result in a **Claim** but as to which no **Claim** has yet been made, the Company may, at the Company's sole option, choose to investigate the **Wrongful Act** or **Personal Injury**. Such an investigation will be at the Company's expense and will not reduce the Limits of Liability or be subject to the Deductible provisions of this Policy until one of the following occurs:

**a.**   A **Claim** results from the **Wrongful Act** or **Personal Injury** under investigation; or

**b.**   The Company incurs $20,000 in expenses arising from the investigation.

If a **Claim** is made and reported to the Company, or once the Company incurs $20,000 in investigative expense, any further payment will be considered **Claims Expense** and will reduce the applicable Limits of Liability and be subject to the Deductible provisions of this insurance.

No coverage for **Pre-Claim Assistance Expenses** is provided by this Policy except as provided by this Section **II** – Insuring Agreements **B.** Additional Payments **3.** Pre-Claim Assistance Expenses.

**4.   Sexual Abuse**

The Company shall pay those sums the **Insured** becomes legally obligated to pay as **Damages** and **Claim Expenses** because of **Sexual Injury** up to a limit of $10,000 per **Policy Period** including the Extended Reporting Period, if applicable, as a result of all **Sexual Act(s)** perpetrated or alleged to have been perpetrated by any **Insured** or for allegations that the **Insured** was negligent in hiring, training or supervising any **Insured** who perpetrated or is alleged to have perpetrated a **Sexual Act** resulting in **Sexual Injury** provided:

**a.**   Such **Sexual Act** is perpetrated or alleged to have been perpetrated during the Policy Period or on or after the **Retroactive Date** and before the end of the **Policy Period**; and

**b.** Prior to the effective date of this Policy no **Insured** had any knowledge of such **Sexual Act** or any fact, circumstance, situation or incident involving such **Sexual Act** which would lead a reasonable person in that **Insured's** position to conclude that a **Claim** was likely.

With respect to this Section **II** – Insuring Agreements, **B.** Additional Payments, **4.** Sexual Abuse, this Policy does not apply to any **Claim** based upon, arising out of, or in any way involving:

**(1)** Any **Insured** who perpetrates or is alleged to have perpetrated a **Sexual Act** resulting in **Sexual Injury**; however, the Company will defend such **Insured** and pay **Claim Expenses** on their behalf unless it is established in fact that such **Insured** perpetrated such **Sexual Act**;

**(2)** Any manager, supervisor, partner, officer, director or trustee who gains knowledge of any actual or alleged **Sexual Act** and fails to take reasonable care to prevent a future **Sexual Act**;

**(3)** Any **Sexual Act** which is perpetrated or alleged to have been perpetrated by an **Insured** who previously perpetrated or is alleged to have previously perpetrated a **Sexual Act**, and after a manager, supervisor, partner, officer, director or trustee has gained knowledge of the previously perpetrated or previously alleged to have been perpetrated **Sexual Act**; or

**(4)** Any **Sexual Injury** to any employee of an **Insured.**

No coverage for **Sexual Abuse** is provided by this Policy except as provided by this Section **II** – Insuring Agreements, **B.** Additional Payments, **4.** Sexual Abuse.

**5. Third Party Discrimination**

The Company shall pay those sums the **Insured** becomes legally obligated to pay as **Damages** because of **Third Party Discrimination** up to a limit of $25,000 per **Policy Period** including the Extended Reporting Period, if applicable, in the performance of **Professional Services** rendered or that should have been rendered by the **Insured**; provided:

**a.** The **Third Party Discrimination** happens during the **Policy Period** or on or after the **Retroactive Date** and before the end of the **Policy Period**; and

**b.** Prior to the effective date of this Policy no **Insured** had any knowledge of such **Third Party Discrimination** or any fact, circumstance, situation or incident which would lead a reasonable person in that **Insured's** position to conclude that a **Claim** for **Third Party Discrimination** was likely.

No coverage for **Third Party Discrimination** is provided by this Policy except as provided by this Section **II** – Insuring Agreements, **B.** Additional Payments, **5.** Third Party Discrimination.

Payments under this Paragraph **B.** are limited to the applicable limits stated in this section, shall be subject to the Limits of Liability stated in the Declarations and shall be subject to the Deductible stated in the Declarations. Once the applicable limit has been paid, the Company's obligation to defend has ended.

**C. Supplementary Payments**

**1. Disciplinary Proceeding**

**a.** Upon submission to the Company of satisfactory written proof of payment by the Named Insured, the Company shall reimburse the Named Insured up to $25,000 per **Policy Period** including the Extended Reporting Period, if applicable, for all reasonable and necessary legal fees and legal expenses incurred in response to a **Disciplinary Proceeding** against the Named Insured first initiated during the **Policy Period**, or the Extended Reporting Period, if applicable; provided:

**(1)** The **Wrongful Act** giving rise to the **Disciplinary Proceeding** happens during the **Policy Period** or on or after the **Retroactive Date** and before the end of the **Policy Period**; and

**(2)** Prior to the effective date of this Policy no **Insured** had any knowledge of such **Wrongful Act** or any fact, circumstance, situation or incident which would lead a reasonable person in the **Insured's** position to conclude that a **Disciplinary Proceeding** was likely.

**b.** The **Insured** shall give the Company written notice as soon as practicable of any **Disciplinary Proceeding** first initiated against the **Insured** during the **Policy Period** or the Extended Reporting Period, if applicable. In any event, such **Disciplinary Proceeding** must be reported to the address stated in the Claim Reporting Policyholder Notice attached to this Policy no later than 60 days after the end of the **Policy Period** or the Extended Reporting Period, if applicable.

    **c.** No reimbursement will be made for the Named Insured's payment of any taxes; criminal or civil fines, penalties or sanctions; registration or licensing fees; or any monetary judgment, award or settlement of any kind.

**2. Loss Of Earnings And Expense Reimbursement**

    **a.** Upon submission to the Company of satisfactory written proof of payment by the **Insured**, the Company shall reimburse the Named Insured for all reasonable and necessary expenses incurred by an **Insured** for attendance, at the Company's written request, at any arbitration, **Mediation**, deposition, hearing or trial in connection with a **Claim** to which this Policy applies. The Named Insured shall provide written proof of payment of expenses as soon as practicable to the Company at the address stated in the Claim Reporting Policyholder Notice attached to this Policy within 60 days after incurring such expenses.

    **b.** The Company shall compensate the Named Insured for an **Insured's** loss of earnings up to a maximum of $400 per day for any **Insureds** who attend, at the Company's written request, any arbitration, **Mediation**, deposition, hearing or trial in connection with a **Claim** to which this Policy applies.

    **c.** The maximum the Company will reimburse the Named Insured for all **Insureds** for compensation of all loss of earnings and expense reimbursement per **Policy Period** including the Extended Reporting Period, if applicable, for all **Claims** to which this Policy applies and all attendances at the Company's written request is $10,000.

No coverage for **Loss of Earnings And Expense Reimbursement** is provided by this Policy except as provided by this Section **II** – Insuring Agreements, **C.** Supplementary Payments, **2.** Loss of Earnings And Expense Reimbursement.

**3. Public Relations Expenses**

Upon submission to the Company of satisfactory written proof of payment by the **Insured,** the Company shall reimburse the **Insured** for **Public Relations Expenses** up to a limit of $5,000 per **Policy Period** including the Extended Reporting Period, if applicable, as the direct result of **Wrongful Act** or **Personal Injury** provided:

    **a.** The **Wrongful Act** or **Personal Injury** happens during the **Policy Period** or on or after the **Retroactive Date** and before the end of the **Policy Period**; and

    **b.** Prior to the effective date of this Policy no **Insured** had any knowledge of such **Wrongful Act**, **Personal Injury** or any fact, circumstance, situation or incident which would lead a reasonable person in the **Insured's** position to conclude that a **Claim** was likely**.**

No coverage for **Public Relations Expenses** is provided by this Policy except as provided by this Section **II** – Insuring Agreements, **C.** Supplementary Payments, **3.** Public Relations Expenses.

**4. Subpoena And Record Request Assistance**

In the event that during the **Policy Period**:

    **a.** The **Insured** first receives a subpoena or a written request for the **Insured's** records or files or notice of deposition relative to a **Wrongful Act** or **Personal Injury** in the performance of **Professional Services** rendered or that should have been rendered by the **Insured** or by any person or organization for whose **Wrongful Act** or **Personal Injury** the **Insured** is legally responsible; and

    **b.** The **Insured** reports the receipt of such subpoena or request in writing to the Company within 30 days of such receipt and prior to a **Claim** being first made against the **Insured** arising out of such **Wrongful Act** or **Personal Injury**;

then the Company shall pay on behalf of the **Insured** up to $5,000 per **Policy Period** for reasonable and necessary legal fees and legal expenses incurred for engaging the services of legal counsel selected by the Company to assist the **Insured** in responding to such subpoena or request.

Payments under this Paragraph **C.** are limited to the applicable limits stated in this section, shall be in addition to the Limits of Liability stated in the Declarations and shall not be subject to the Deductible. Once the applicable limit has been paid, the Company's obligation to defend has ended.

**SECTION III – DEFINITIONS**

**A. Application** means:

1.  The application for this Policy and for any policy issued by the Company, or any of its affiliates, of which this Policy is a direct or indirect renewal or replacement;

2.  Any attachment to any such application; and

3.  Any other materials or applications submitted with or incorporated into any such application.

B.  **Bodily Injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

C.  **Claim** means the **Insured's** receipt of:

1.  A written demand for **Damages** or remedial **Professional Services** involving this Policy; or

2.  The service of suit or institution of arbitration proceedings against the **Insured**;

however, **Claim** shall not include any **Disciplinary Proceeding**.

D.  **Claim Expenses** means reasonable and necessary amounts incurred by the Company, or by the **Insured** with the prior written consent of the Company, in the defense of that portion of any **Claim** for which coverage is afforded under this Policy, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; however, **Claim Expenses** shall not include:

1.  Salary, wages, overhead, or benefit expenses of or associated with employees or officials of the Named Insured or employees or officials of the Company; or

2.  Salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive outside counsel for the Named Insured or the Company.

E.  **Contingent Bodily Injury And Property Damage** means any actual or alleged **Bodily Injury** or **Property Damage** based upon or arising out of any **Wrongful Act** of the **Insured** in the performance of **Professional Services**.

F.  **Damages** means the monetary portion of any judgment, award or settlement, including punitive or exemplary damages to the extent insurable by law; however, **Damages** shall not include:

1.  Multiplied portions of damages in excess of actual damages, including trebling of damages;

2.  The cost of any modifications or changes to the **Insured's** security measures, procedures, software or hardware required or agreed to by the **Insured** to satisfy a judgment, award or settlement;

3.  Any cost required to repair, build or modify property to comply with any award by a court, administrative order, arbitration award or any similar judgment;

4.  Taxes, criminal or civil fines assessed against an **Insured**, or attorneys' fees of a party other than an **Insured** or other penalties imposed by law;

5.  Sanctions;

6.  Matters which are uninsurable under the law pursuant to which this Policy will be construed;

7.  The return, withdrawal, reduction or restitution or payment of any fees, profits or charges for services or consideration or any expenses paid to the **Insured** for services or goods; or

8.  Any cost to correct, perform or re-perform services of a professional nature when the **Insured** had the opportunity and capability to correct, perform or re-perform the services of a professional nature with respect to which such costs were incurred.

G.  **Disciplinary Proceeding** means the **Insured's** receipt of any proceeding by a United States of America domiciled regulatory body, disciplinary board or governmental agency, any of which has the authority to investigate charges of professional misconduct in the performance of **Professional Services**; however, **Disciplinary Proceeding** shall not include any criminal proceeding.

H.  **Electronic Communications System** means any wired, wireless, radio, electromagnetic, photo-optical or photo-electronic facility for the transmission of electronic communications; any electronic data processing systems or related electronic equipment for the storage of such communications; and any computer.

I.  **Financial Planner** means an investment professional who helps individuals or entities set and achieve their financial goals through investments, tax planning, asset allocation, risk management, retirement planning and estate planning, assisting in increasing net worth in furtherance of the individual's or entity's financial objectives.

**J.   Gross Revenues** means the gross amount of compensation received by the Named Insured for **Professional Services** during the **Policy Period**.

**K.   Independent Contractor** means any natural person under written contract by the Named Insured or **Subsidiary** to perform the same **Professional Services** as the Named Insured or **Subsidiary**, but only while in performing such **Professional Services** on behalf of or at the direction of the Named Insured or **Subsidiary**.

**L.   Interrelated Wrongful Act** means **Wrongful Acts** that have as a common connection or nexus any fact, circumstance, situation, event, cause, transaction or series of facts, circumstances, situations, events, causes or transactions.

**M.   Mediation** means the voluntary process in which an objective third party who is a qualified professional mediator selected by the parties to the **Claim**, with written agreement of the Company, intervenes between the parties in an attempt to achieve settlement of the **Claim**. **Mediation** does not include litigation, arbitration or any court mandated proceeding.

**N.   Mold** means any permanent or transient fungus, mold, mildew or mycotoxin, or any of the spores, scents or by-products resulting therefrom that exist, emanate from, or move anywhere indoors or outdoors, regardless of whether they are proved to cause disease, injury or damage.

**O.   Mold Event** means any actual, alleged or threat of contact with, exposure to, or inhalation, ingestion, absorption, discharge, dispersal, seepage, migration, release, escape, presence, growth or reproduction of **Mold**.

**P.   Personal Injury(ies)** means:

  **1.**   Libel, slander or defamation;

  **2.**   Invasion or infringement of the right of privacy;

  **3.**   Malicious prosecution, abuse of process, false arrest or false imprisonment; or

  **4.**   Humiliation or infliction of emotional distress;

  committed in the performance of **Professional Services**.

**Q.   Pollutant** means any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals, or waste. Waste includes medical waste and all other materials to be disposed of, recycled, stored, reconditioned, or reclaimed.

**R.   Pollution Incident** means the actual or alleged emission, discharge, dispersal, seepage, migration, release or escape of **Pollutants** into or upon land, the atmosphere, or any watercourse or body of water, which results in environmental damage, and did not arise from dishonest, fraudulent, malicious, or criminal conduct committed by the **Insured**, at the **Insured's** direction, or with the **Insured's** prior knowledge or from or at property or facilities which are or were at any time owned, leased or rented by any **Insured**. The entirety of such emission, discharge, release or escape will be deemed to be one **Pollution Incident**.

**S.   Policy Period** means the period from the inception date of this Policy to the policy expiration date stated in the Declarations, or the effective date of any earlier cancellation or termination.

**T.   Pre-Claim Assistance Expenses** means costs, attorneys' fees, experts' fees, charges and expenses incurred by the Company in connection with the investigation or evaluation of any potential **Claim**. **Pre-Claim Assistance Expenses** does not include fees, salaries, regular or overtime wages, overhead, or benefit expenses associated with any **Insured**.

**U.   Private Data** means data containing an individual's:

  **1.**   Driver's license or other state-issued identification number, social security number, unpublished telephone number, or savings account, checking account, credit card or debit card number each when in combination with the security code, access code, password or pin for such account or card number;

  **2.**   Nonpublic personal information as defined in the Gramm-Leach-Bliley Act of 1999 (GLBA), as amended, and regulations issued pursuant thereto;

  **3.**   Protected health information as defined in the Health Insurance Portability and Accountability Act of 1996 (HIPAA), as amended, and regulations issued pursuant thereto, and medical and healthcare information;

  **4.**   Private personal information as defined under a **Security Breach Notice Law**; and

    **5.** Private personal information as defined under the law of a country other than the United States of America, which law is intended to provide for the protection of such private personal information;

not including any lawfully available data accessible by the general public.

**V. Professional Services** means those services stated in the Declarations rendered for others for a fee.

**W. Property Damage** means physical injury to, destruction of or contamination of tangible or intangible property, including all resulting loss of use of that property.

**X. Public Relations Expenses** means actual, necessary and reasonable expenses approved by the Company in writing and incurred by the **Insured** in retaining a public relations consultant to protect or restore the **Insured's** business reputation or in planning, implementing, executing and managing a public relations campaign under the direction of a public relations consultant to counter or minimize any actual or anticipated adverse effects of negative publicity.

**Y. Retroactive Date** means the Retroactive Date stated in the Declarations.

**Z. Security Breach Notice Law** means any law, statute or regulation within the United States of America, its territories or possessions, Puerto Rico or Canada requiring the Named Insured to notify individuals of the compromise or possible compromise of the security of their confidential information in the Named Insured's care, custody or control; the European Union (EU) Data Protection Act of 1995; and the General Data Protection Act of 2018.

**AA. Sexual Act** means sexual abuse, sexual molestation or sexual exploitation arising out of the conduct of the **Insured's Professional Services**.

**BB. Sexual Injury** means **Bodily Injury**, sickness, disease, unlawful detention, false imprisonment, humiliation, emotional distress, mental anguish, sexual dysfunction, invasion of right of privacy, assault or battery, solely when arising out of a **Sexual Act**.

**CC. Subsidiary(ies)** means:

    **1.** Any entity, excluding partnerships or joint ventures, of which the **Insured** owns, or has the right to vote, more than 50% of the outstanding voting securities representing the present right to vote for the election of, or designate the appointment of, directors on a board of directors or equivalent management positions including, but not limited to, members of the board of managers of a limited liability company; or

    **2.** Any organization operated as a joint venture in which, on or prior to the inception date stated in the Declarations, the **Insured** owns, directly or through one or more **Subsidiaries**, exactly 50% of the organization's outstanding securities with voting rights and, under a written agreement with the organization's remaining owners, has sole control of the organization's management and operations.

**DD. Third Party Discrimination** means conduct of an **Insured** with respect to any natural person who is not an **Insured** or an additional insured that allegedly culminated in any actual or alleged discrimination on the basis of age, color, disability, familial status, marital status, national origin, pregnancy, race, sex, sexual preference, religion or other protected class or characteristic under applicable federal, state or local statute or ordinance.

**EE. Unauthorized Access** means a breach of the Named Insured's **Electronic Communications System**, including:

    **1.** Any intentional violation, interception, or use or misuse of the Named Insured's **Electronic Communications System**, whether or not for profit or gain, by any person, without the permission, knowledge or ratification of the **Insured**;

    **2.** Access to the Named Insured's **Electronic Communications System** that is with the **Insured's** permission where such permission is the result of fraud or deception, including phishing scams;

    **3.** Use of the Named Insured's **Electronic Communications System** by a party, including but not limited to a rogue **Employee**, authorized by the **Insured** to use such system, who does so for an unauthorized purpose;

    **4.** The introduction of viruses, malware, or other programs into the Named Insured's **Electronic Communications System** which contain fraudulent or destructive instructions or code including any inadvertent transmission of such programs to a third party;

    **5.** A credible threat or an extortion demand, including but not limited to a threat or demand by ransomware, received by the **Named Insured** threatening or portending loss, injury or damage to:

        **a.** The Named Insured's **Electronic Communications System**, including programs, electronic data and media which form a part of the Named Insured's **Electronic Communications System**; or

    **b.**  Money, securities, bonds or similar financial instruments, solely to the extent that record of such is maintained in digital or electronic format on the Named Insured's **Electronic Communications System**;

    for the purpose of extorting money or other valuable consideration from the Named Insured; and

  **6.**  Failure to prevent a denial of service attack on the Named Insured's **Electronic Communications System** or to prevent the use of the Named Insured's **Electronic Communications System** by an unauthorized user or code to launch a denial of service attack on a third party.

**FF. Unintentional Data Compromise** means:

  **1.**  Any computer security incident, intrusion, breach, compromise, theft, loss or misuse of the Named Insured's **Private Data** maintained by the Named Insured, including the theft or loss of any paper records;

  **2.**  The failure of any third party to prevent the unauthorized viewing, copying or distribution of **Private Data** which the Named Insured has entrusted to such party under a written contract or agreement that specifically requires such party to protect the confidentiality of the **Private Data** so entrusted; or

  **3.**  Unintentional breach of the Named Insured's written privacy policy.

**GG. Wrongful Act** means any negligent act, error or omission in **Professional Services**, and includes **Interrelated Wrongful Acts**.

## SECTION IV – EXCLUSIONS

This Policy does not apply to any **Claim**, Additional Payment or Supplementary Payment:

**A.**  Made against the **Insured**:

  **1.**  By any person or organization or its subrogee, assignee, contractor, subcontractor, or parent organization, **Subsidiary**, division or affiliated organization which was or is operated, managed, owned or otherwise controlled, whether directly or indirectly, or in whole or in part, by:

    **a.**  Any **Insured** or parent organization or any **Subsidiary**, division or affiliated organization; or

    **b.**  Any principal, partner, officer, director, member, manager, employee or shareholder of the Named Insured;

  **2.**  By any principal, partner, officer, director, member, manager, employee or shareholder of an **Insured** or any subrogee or assignee of such person; or

  **3.**  By or on behalf of any person or organization included in the definition of **Insured**; or

**B.**  Based upon or arising out of:

  **1.**  The liability of others assumed by the **Insured** under any contract or agreement; however, this exclusion will not apply to liability an **Insured** would have in the absence of the contract or agreement by reason of a **Wrongful Act** of the **Insured** in the performance of **Professional Services**;

  **2.**  A **Wrongful Act** or **Personal Injury** committed by an organization, or a principal, partner, officer, director, trustee, member, manager or employee of an organization:

    **a.**  Not stated in the Declarations; or

    **b.**  Not included within the description of **Insured** as stated in Section **I – The Insured** and as limited therein;

  **3.**  **a.**  Any obligation of the **Insured** under any workers' compensation, unemployment compensation or disability benefits law or under any similar law; or

    **b.**  The **Insured's** activities as a fiduciary under the Employee Retirement Income Security Act of 1974, as amended, or similar provisions of any federal, state or local statute or common law;

  **4.**  Wrongful termination or other employment related practices;

  **5.**  **a.**  Infringement or inducement of infringement of copyright, patent, trademark, service mark, trade name, or trade secret or misappropriation of trade secrets or confidential or proprietary information relating to the Named Insured's business operations;

    **b.**  Unfair competition based upon infringement of copyright, patent, trademark, service mark, trade name or trade secret;

    **c.**  The value of trade secrets, confidential processing methods or other confidential or proprietary information; or

    **d.** Any dispute related to ownership of any intellectual property;

**6.** Any warranties or guarantees, express, implied or otherwise, or any cost estimates;

**7.** Any unlawful discrimination by any **Insured**; however, this exclusion will not apply to coverage provided under Section **II** – Insuring Agreement, **B.** Additional Payments, **5.** Third Party Discrimination;

**8.** Any conversion, misappropriation, commingling of or defalcation of funds or property;

**9.** Any inability or failure of any party to pay or collect monies or to collect or pay federal, state, county or local tax, including, but not limited to, income tax, sales tax or property tax;

**10.** The:

    **a.** Formation, syndication, operation, administration, reorganization or dissolution of any limited partnership, limited liability company, limited liability partnership or Real Estate Investment Trust (REIT); or

    **b.** Syndication of property;

**11.** The:

    **a.** Preparation of a financial statement, if a compilation, review or audit; or

    **b.** Performance of any analytical analysis for the purpose of preparing a financial statement, if a compilation, review or audit;

**12.** The failure to effect or maintain, or to advise of the need to effect or maintain, insurance, suretyship or bond;

**13.** Any actual or alleged violation of the Securities Act of 1933, Securities Exchange Act of 1934, Investment Company Act of 1940, any state blue sky or securities law or similar state or federal statute or any amendments thereto, or any regulation or order issued pursuant to any of the foregoing statutes;

**14.** The cost of recall, recovery, shipment, correction or reprinting caused by a defect or injurious condition in any advertisement or the cost of any services in connection therewith;

    **a.** Based upon or arising out of a mistake in advertised price or incorrect description of any article or commodity; alleged false, misleading or deceptive advertising or misrepresentation in advertising or products or services advertised by the **Insured** or others; or

    **b.** Based upon or arising out of games of chance or any other gaming or contests including lottery or sweepstakes;

**15.** The performance of **Professional Services** with respect to the management of assets under a discretionary or nondiscretionary contract, whether written or oral;

**16.** Acts or services as an insurance agent, insurance broker, investment adviser, **Financial Planner**, lawyer, accountant, registered representative or broker/dealer of securities or commodities, mortgage banker, mortgage broker, investment banker, independent third party escrow agent, construction adviser, architect, property developer or real estate agent or broker;

**17.** The testing of welds, weld certification or the testing of structural steel; or

**18.** Any violation of:

    **a.** The Telephone Consumer Protection Act of 1991 (TCPA) and amendments thereto or any similar or related federal, state or local statute, law, rule, ordinance or regulation;

    **b.** The CAN-SPAM Act of 2003 and amendments thereto or any similar or related federal, state or local statute, law, rule, ordinance or regulation;

    **c.** The Fair Credit Reporting Act (FCRA) and amendments thereto or any similar or related federal, state or local statute, law, rule, ordinance or regulation, including the Fair and Accurate Credit Transactions Act of 2003 (FACTA); or

    **d.** Any federal, state or local statute, law, rule, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and amendments thereto, that addresses, prohibits or limits the dissemination, interception, receiving, sending, transmitting, communicating, printing, disposal, collecting, recording or distribution of information or other material; or

**C.** Based upon, arising out of, or in any way involving:

1.  The insolvency, receivership, bankruptcy, liquidation or financial inability to pay, of any bank, savings and loan, banking firm, registered representative or broker/dealer of securities or commodities, insurance company, reinsurer, risk retention group or captive (or any other self-insurance plan or trust by whatsoever name);

2.  The insolvency, receivership, bankruptcy, liquidation or financial inability of any subsidiary not included in the definition of **Insured**;

3.  Any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: antitrust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships;

4.  Any acts or services performed by any **Insured** which is not licensed or certified to perform such acts or services if such licensing or certification is required by law;

5.  Any conduct of the **Insured** or at the **Insured's** direction that is intentional, willful, dishonest, fraudulent or that constitutes a willful violation of any statute or regulation; however, this exclusion will not apply to:

    a.  The strictly vicarious liability of any **Insured** for the intentional, willful, dishonest or fraudulent conduct of another I**nsured** or for the conduct of another **Insured** that constitutes a willful violation of any statute or regulation; or

    b.  **Claim Expenses** incurred until an allegation is determined through final adjudication to be intentional, willful, dishonest or fraudulent or a willful violation of any statute or regulation;

6.  The gaining by any **Insured** of any profit, remuneration or advantage to which such **Insured** was not legally entitled; however:

    a.  The Company will continue to defend a **Claim** alleging any of the foregoing conduct until an allegation is determined through final adjudication against any **Insured** as to such conduct, at which time the **Insured** shall reimburse the Company for the costs of defending the **Claim**; and

    b.  Any fact pertaining to any **Insured** will not be imputed to any other **Insured** under this Policy for the purpose of determining the applicability of this exclusion;

7.  Any **Wrongful Act** or **Personal Injury** or any fact, circumstance or situation that has been the subject of any notice given prior to the **Policy Period** under any other policy of insurance or to any reinsurer, risk retention group or captive (or any other self-insurance plan or trust by whatsoever name) or insurance representative;

8.  Any **Wrongful Act** or **Personal Injury**, any fact, circumstance, situation, incident, **Claim** or suit referred to in an answer to any question of the **Application**;

9.  a.  Actual, alleged or threatened discharge, disposal, migration, dispersal, release or escape of **Pollutants**; or

    b.  Direction, order or request to test for, monitor, remediate, clean up, remove, contain, treat, detoxify, or neutralize **Pollutants**, or to pay for or contribute to the costs of undertaking such actions;

    however, this exclusion does not apply to coverage provided under Section **II** – Insuring Agreements, **B.** Additional Payments, **2.** Pollution;

10. Any actual or alleged **Bodily Injury** or **Property Damage**; however, this exclusion will not apply to coverage provided under Section **II** – Insuring Agreements, **B.** Additional Payments, **1.** Contingent Bodily Injury And Property Damage;

11. **Unauthorized Access** to the Named Insured's **Electronic Communications System**;

12. Any **Unintentional Data Compromise**;

13. Any actual or alleged price discounts, prizes, awards, money, or valuable consideration given in excess of a total contracted or expected amount;

14. Any actual or threatened abuse, molestation or exploitation by anyone; however, this exclusion does not apply to coverage provided under Section **II** – Insuring Agreements, **B.** Additional Payments, **4.** Sexual Abuse; or

15. **Mold** or **Mold Event**.

## SECTION V – TERRITORY

The insurance afforded by this Policy applies worldwide except for any **Claim** made or **Policy Payment** incurred in any country on which the government of the United States of America has imposed trade sanctions, embargoes or any similar regulations that prohibit the transaction of business with or within such country.

**SECTION VI – LIMITS OF LIABILITY, DEDUCTIBLES AND INTERRELATED WRONGFUL ACTS**

**A. Limits Of Liability**

    **1. Each Claim**

      The liability of the Company for the combined total of **Damages** and **Claim Expenses** for each **Claim** first made and reported against the **Insured** during the **Policy Period** or the Extended Reporting Period, if applicable, will not exceed the Each Claim Limit of Liability stated in the Declarations.

    **2. Policy Aggregate**

      Subject to Paragraph **1.**, the liability of the Company for the combined total of all **Damages** and **Claim Expenses** arising out of all **Claims** first made and reported against the **Insured** during the **Policy Period** and the Extended Reporting Period, if applicable, will not exceed the Policy Aggregate Limit of Liability stated in the Declarations.

**B. Deductible**

    **1. Each Claim Deductible**

      The Deductible stated in the Declarations will be paid by the Named Insured and will be applicable to each **Claim** and will include **Damages** and **Claim Expenses**. Such Deductible amounts will be paid by the Named Insured within 10 days of receipt of written demand by the Company. The total payments requested from the Named Insured in respect of each **Claim** will not exceed the Each Claim Deductible stated in the Declarations.

    **2. Deductible Credits**

      With respect to this Policy, if a **Claim** is settled prior to the filing of lawsuit or institution of arbitration, the Deductible for such **Claim** will be reduced by 75% or $10,000, whichever is less.

      If after filing of lawsuit or institution of arbitration, if the Named Insured and the Company agree to the use of **Mediation** and a **Claim** is settled at that **Mediation**, the Deductible for such **Claim** will be reduced by 50% or $10,000, whichever is less.

      The Deductible credits are not additive or cumulative.

    **3. Aggregate Deductible**

      Subject to Paragraph **1.**, the total Deductible payments to be paid by the Named Insured will not exceed the Aggregate Deductible stated in the Declarations for **Damages** and **Claim Expenses** arising out of all **Claims**, other than any Supplementary Payment, first made and reported during the **Policy Period** and the Extended Reporting Period, if applicable.

**C. Multiple Insureds, Claims And Claimants**

    The inclusion herein of more than one **Insured** in any **Claim** or the making of **Claims** by more than one person or organization will not operate to increase the Limits of Liability stated in the Declarations. More than one **Claim** arising out of a single **Wrongful Act**, **Personal Injury**, **Interrelated Wrongful Act** or a series of related **Wrongful Acts** or **Personal Injuries** will be considered a single **Claim**. All such **Claims**, whenever made, will be treated as a single **Claim** and will be deemed to be first made on the date on which the earliest **Claim** arising out of such **Wrongful Act**, **Personal Injury** or **Interrelated Wrongful Act** is made or with respect to written notice given to and accepted by the Company pursuant to Section **VIII** – Claims Reporting And Notice, **B.** Discovery Of Potential Claims, on the date within the **Policy Period** on which such notice of potential **Claim** is first received by the Company.

**SECTION VII – DEFENSE, SETTLEMENTS AND CLAIM EXPENSES**

**A. Defense, Investigation And Settlement Of Claims**

    The Company will have the right and duty to defend the **Insured** and to investigate any **Claim** and **Disciplinary Proceeding** under the Policy, regardless of whether allegations are false or fraudulent, pursuant to the following provisions:

    **1.** **Claim Expenses** incurred in defending an **Insured** and investigating a **Claim** will be a part of and will not be in addition to the Limits of Liability stated in the Declarations. Such **Claim Expenses** will reduce the Limits of Liability and will be applied against the Deductible. The Company will have no obligation to pay any **Damages** or to defend or continue to defend any **Claim** or to pay **Claim Expenses** after the Limits of Liability stated in the Declarations have been exhausted by payment(s) of **Damages** or **Claim Expenses**.

2. The Company shall select defense counsel; however, if the law of the state of the Named Insured's domicile, stated in the Declarations, allows the **Insured** to control the selection of defense counsel where a conflict of interest has arisen between the **Insured** and the Company, the Company will provide a list of attorneys or law firms from which the **Insured** may designate defense counsel who will act solely in the interest of the **Insured**, and the **Insured** will direct such defense counsel to cooperate with the Company. Such cooperation will include:

   a. Providing on a regular basis, but not less frequently than every 3 months, written reports on claimed **Damages**, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the **Claim**;

   b. Providing any other reasonable information requested;

   c. Fully itemized billing on a periodic basis; and

   d. Reasonably cooperating with the Company and the **Insured** in resolving any disputes, including but not limited to, billing disputes;

   and the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as set forth above, will be included in **Claim Expenses**. Such **Claim Expenses** will be a part of and will not be in addition to the Limits of Liability stated in the Declarations. Such **Claim Expenses** will reduce the Limits of Liability and will be applied against the Deductible.

3. Any payments shall be made in U.S. currency from bank or financial institution located in the United States of America.

**B. Consent To Settlement**

The Company will not settle any **Claim** without the prior written consent of the first Named Insured, but the Company will have, at all times, the right to recommend a settlement of any **Claim**. If the first Named Insured refuses to settle such **Claim** pursuant to the Company's recommendations and acceptable to the claimant, then the Company's liability in regard to such **Claim** will not exceed the sum of:

1. The amount of **Damages** for which the Company could have settled the **Claim**;

2. **Claim Expenses** accrued as of the date such settlement was proposed in writing by the Company to the Named Insured; and

3. 50% of all covered **Damages** and **Claim Expenses** incurred thereafter on account of such **Claim**.

Such amounts are subject to the provisions of Paragraph **A.**

**SECTION VIII – CLAIMS REPORTING AND NOTICE**

**A. Claim Reporting Provision**

1. It is a condition precedent to coverage afforded by this Policy that the **Insured** will give to the Company written notice as soon as practicable of any **Claim** first made against the **Insured** during the **Policy Period** or the Extended Reporting Period, if applicable, but in no event later than:

   a. 60 days after expiration of the **Policy Period**; or

   b. The expiration of the Extended Reporting Period, if applicable.

   Such **Claim** must be reported to the address stated in the Claim Reporting Policyholder Notice.

2. Subject to Paragraph **1.**, in the event a suit is brought against the **Insured**, the **Insured** will immediately forward to the address stated on the Claims Reporting Policyholder Notice every demand, notice, summons or other process received by them or by their representative.

**B. Discovery Of Potential Claims**

If during the **Policy Period**, the **Insured** first becomes aware of a specific **Wrongful Act** or a **Personal Injury** which is reasonably expected to result in a **Claim** within the scope of coverage of this Policy, then the **Insured** may provide written notice to the Company at address stated in the Claims Reporting Policyholder Notice. If such written notice is received by the Company during the **Policy Period**, then any **Claim** subsequently made against the **Insured** arising out of such **Wrongful Act** or **Personal Injury** will be deemed for the purpose of this insurance to have been first made on the date on which such written notice is received by the Company.

It is a condition precedent to the coverage afforded by this Paragraph **B.** that written notice shall be given to the Company containing the following information:

**1.** The description of the specific **Wrongful Act** or **Personal Injury**;

**2.** The date on which such **Wrongful Act** or **Personal Injury** took place;

**3.** The injury or damage which has or may result from such **Wrongful Act** or **Personal Injury**;

**4.** The identity of any injured persons or organization subject to such injury or damage; and

**5.** The circumstances by which the **Insured** first became aware of such **Wrongful Act** or **Personal Injury**.

In connection with **Pre-Claim Assistance Expenses**, the Company, at its sole option, may investigate such circumstance, **Wrongful Act** or **Personal Injury** as stated in Section **II** – Insuring Agreements, **B.** Additional Payments.

**C. Assistance And Cooperation Of The Insured**

The **Insured** shall cooperate with the Company and upon the Company's request, the **Insured** shall:

**1.** Submit to examination and interview by a representative of the Company, under oath if required;

**2.** Attend hearings, **Mediations**, depositions and trials;

**3.** Assist in effecting settlement, securing and giving evidence and obtaining the attendance of witnesses in the conduct of suits; and

**4.** Give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating any **Claim** or defending any **Insured**;

all without cost to the Company, other than expense reimbursement provided by Section **II** – Insuring Agreements, **C.** Supplementary Payments, **2.** Loss Of Earnings And Expense Reimbursement. The **Insured** will further cooperate with the Company and do whatever is necessary to secure and affect any right of indemnity, contribution or apportionment which the **Insured** may have.

The **Insured** will not, with respect to any **Claim** covered under this Policy, except at their own cost, make any payment, admit any liability, settle any **Claims**, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur **Claim Expenses** without the Company's prior written consent, such consent not to be unreasonably withheld. Any costs and expenses incurred by the **Insured** prior to the **Insured** giving written notice of the **Claim** to the Company will be borne by the **Insured** and will not constitute satisfaction of the Deductible.

**D. False Or Fraudulent Claims**

If any **Insured** will commit fraud in proffering any **Claim**, this insurance will become void as to such **Insured** from the date such fraudulent **Claim** is proffered.

**SECTION IX – EXTENDED REPORTING PERIOD**

**A.** If the Named Insured nonrenews this Policy or cancels this Policy pursuant to Section **XI** – Other Conditions, **A.** Cancellation, or if the Company nonrenews this Policy or cancels this Policy pursuant to Section **XI** – Other Conditions, **A.** Cancellation, for reasons other than nonpayment of premium or Deductible or non-compliance with the terms and conditions of this Policy, then the Named Insured will have the right upon payment of an additional premium calculated at the percentage stated in the Declarations of the adjusted annual premium for the **Policy Period**, subject to adjustment as per Section **XI** - Other Conditions, **I.** Premium And Audit, calculated on the percentage stated in the Declarations of the annual minimum premium for the Policy, to extend the coverage granted under this Policy for the period of months stated in the Declarations, as elected by the Named Insured, to apply to:

**1.** **Claims** first made against the **Insured** during the period of months as elected, and reported to the Company pursuant to Section **VIII** – Claims Reporting And Notice, **A.** Claim Reporting Provision, following immediately upon the effective date of such cancellation or nonrenewal, for any **Wrongful Act** or **Personal Injury** which happened on or after the **Retroactive Date** and prior to the effective date of such cancellation or nonrenewal and which is otherwise covered by this Policy; and

**2.** Additional Payments or Supplementary Payments first incurred by or initiated against the **Insured** during the period of months as elected, and reported to the Company pursuant to Section **II** – Insuring Agreements, **B.** Additional Payments and **C.** Supplementary Payments following immediately upon the effective date of such

cancellation or nonrenewal, for any **Wrongful Act** which happened on or after the **Retroactive Date** and prior to the effective date of such cancellation or nonrenewal and which is otherwise covered by this Policy.

This extended period of coverage as elected by the Named Insured and described in this paragraph will be referred to in this Policy as the Extended Reporting Period.

If, however, this Policy is immediately succeeded by similar claims made insurance coverage on which the **Retroactive Date** is the same as or earlier than that stated in the Declarations, the succeeding insurance will be deemed to be a renewal hereof and, in consequence, the Named Insured shall have no right to purchase an Extended Reporting Period.

The quotation of a different premium, Deductible or Limit of Liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

**B.** As a condition precedent to the right to purchase the Extended Reporting Period, the Named Insured must have paid:

    **1.** All Deductibles when due;

    **2.** All premiums due for the **Policy Period**; and

    **3.** All premium and deductible(s) due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this Policy is a renewal or replacement.

The right to purchase the Extended Reporting Period will terminate unless a written notice of such election for the Extended Reporting Period is received by the Company within 60 days after the effective date of cancellation or nonrenewal together with payment of the additional deposit premium for the Extended Reporting Period. If such written notice of request and payment of additional premium for the Extended Reporting Period are not so received by the Company, there will be no right to purchase the Extended Reporting Period at a later date.

**C.** The Named Insured will pay any additional premium that may be due as a result of audit, promptly when due.

**D.** In the event of the purchase of the Extended Reporting Period, the entire premium therefor will be fully earned at its commencement.

**E.** The Extended Reporting Period will not in any way increase the Limits of Liability stated in the Declarations.

**SECTION X – CHANGES IN EXPOSURE**

**A. New Organizations**

If before or during the **Policy Period** the Named Insured acquires or creates a new **Subsidiary** or acquires an entity by merger or consolidation, to perform the same **Professional Services** as the Named Insured, coverage under this Policy automatically will apply to the new organization, provided:

    **1.** Such coverage will apply only with respect to any **Claim** for a **Wrongful Act** or **Personal Injury** taking place after such acquisition or creation; and

    **2.** There is no other similar insurance available to that organization.

Coverage will be subject to the following:

    **a.** Coverage is afforded only until 60 days after the Named Insured acquired or formed the organization or the end of the **Policy Period**, whichever is earlier;

    **b.** The **Retroactive Date** applicable to any **Claim** or **Disciplinary Proceeding** against such organization newly acquired or newly formed by the Named Insured for **Wrongful Acts** or **Personal Injuries** or offenses by **Insureds** will be the date on which the Named Insured newly acquired or newly formed such organization; and

    **c.** No person or organization is an **Insured** with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not stated as a Named Insured in the Declarations.

**B. Acquisition Of The Insured**

If during the **Policy Period** a transaction occurs wherein another organization gains control of the Named Insured through the ownership of more than 50% of the outstanding securities or voting rights representing the present right to vote for the election of directors or equivalent position, or the Named Insured merges into another organization or consolidates with another organization such that the Named Insured is not the surviving organization, then:

1. The first Named Insured must give written notice of such transaction to the Company within 60 days after the effective date of such transaction and provide the Company with such information in connection therewith as the Company may deem necessary; and

2. This Policy will apply only to those **Wrongful Acts** or **Personal Injuries** or offenses which happened on or before the effective date of such transaction.

## C. Cessation Of Subsidiaries

If before or during the **Policy Period** an organization ceases to be a **Subsidiary**, coverage with respect to such **Subsidiary** will continue until the end of the **Policy Period** or the Extended Reporting Period if applicable, provided such coverage will apply only with respect to any **Claim** for a **Wrongful Act** or **Personal Injury** taking place prior to the date such organization ceased to be a **Subsidiary**.

## SECTION XI – OTHER CONDITIONS

### A. Cancellation

1. This Policy may be cancelled by the first Named Insured on behalf of all **Insureds** by mailing to the Company written notice stating when thereafter such cancellation will be effective. If cancelled by the Named Insured, the earned premium will be computed at the customary short rate. Payment or tender of unearned premium will not be a condition precedent to the effectiveness of cancellation, but such payment will be made as soon as practicable.

2. This Policy may be cancelled by the Company by mailing to the first Named Insured, at the address stated in the Declarations, written notice stating when, not less than 30 days thereafter, such cancellation will be effective. However, if the Company cancels the Policy because the Named Insured has failed to pay a premium or Deductible when due, including premium or deductible(s) due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this Policy is a renewal or replacement, this Policy may be cancelled by the Company, by mailing a written notice of cancellation to the first Named Insured stating when, not less than 10 days thereafter, such cancellation will be effective. The mailing of notice as aforementioned will be sufficient notice and the effective date of cancellation stated in the notice will become the end of the **Policy Period**. Such notice will be conclusive on all **Insureds**. Delivery of such written notice to the first Named Insured by the Company will be equivalent to mailing. If cancelled by the Company, earned premium will be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

### B. Representations

By acceptance of this Policy, the **Insureds** agree as follows that the information and statements contained in the **Application(s)** are:

1. The basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy;

2. Their representations;

3. Deemed material to the acceptance of the risk or hazard assumed by the Company under this Policy; and

4. That this Policy is issued in reliance upon the truth of such representations.

### C. Entire Agreement

This Policy, the Declarations, the **Application(s)** and any written endorsements attached hereto will be deemed to be a single unitary contract.

### D. General Liability Coverage

It is a condition precedent to coverage provided under Section **II** – Insuring Agreements, **B.** Additional Payments, **1.** Contingent Bodily Injury And Property Damage that the Named Insured maintain during the **Policy Period** and the Extended Reporting Period, if applicable, in-force General Liability Insurance, including the Products and Completed Operations hazard, with an insurance company, risk retention group or captive (or any other self-insurance plan or trust by whatsoever name) which has an A.M. Best's rating of B++ or higher and having an each occurrence limit of liability equal to or greater than the Each Claim Limit Of Liability stated in the Declarations.

### E. Other Insurance

This insurance is in excess of the Deductible stated in the Declarations and any other insurance available to the **Insured** whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this Policy.

**F.  Changes**

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company will not affect a waiver or a change in any part of this Policy and will not estop the Company from asserting any right under the terms of the Policy. The terms of this Policy will not be waived or changed, except by written endorsement issued to form a part of this Policy, and this Policy embodies all agreements existing between the **Insureds** and the Company or any of its agents relating to this insurance.

**G.  Assignment Of Interest**

Assignment of interest under this Policy will not bind the Company unless its consent is endorsed hereon.

**H.  Subrogation**

1.  In the event of any payment under this Policy, the Company will be subrogated to the right of recovery of all **Insureds** to the extent of such payment. The **Insured** will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** will do nothing to prejudice such rights.

2.  The Company will not exercise any such rights against any person or organization included in the definition of **Insured**. Notwithstanding the foregoing, however, the Company reserves the right to exercise any rights of subrogation against an **Insured** in respect of any **Claim** brought about or contributed to by an intentional, willful, dishonest, fraudulent act or omission of such **Insured** or by an act or omission of such **Insured** that constitutes a willful violation of any statute or regulation.

3.  Any amount so recovered, whether effected by the Company or by the **Insured**, will first be used for the repayment of expenses incurred toward subrogation; second, for any **Damages** and **Claim Expenses** payment by the **Insured** which is in excess of the amount of the Limit of Liability under this Policy and which is excess of any amount paid by any insurer under any other policy; third, for any damages and claims expenses payment by any excess carrier on behalf of the Insured; fourth, for any damages and claim expenses payment by any primary carrier on behalf of the Insured; and, last, for repayment of the **Insured's** Deductible.

**I.  Premium And Audit**

Upon expiration of this Policy, the first Named Insured will furnish upon request to the Company a statement of the Named Insured's actual **Gross Revenues** or other premium base stated in the Declarations for the **Policy Period**. The actual earned premium will be computed thereon at the premium rate stated in the Declarations. If the actual earned premium is more than the deposit premium stated in the Declarations, the Named Insured will pay the difference to the Company; if less, the Company will refund the difference to the Named Insured except that the Company will be entitled to the minimum premium stated in the Declarations. The Company will have the right to require of the Named Insured, at any time within the said **Policy Period** or 1 year thereafter, a sworn statement of the entire amount (or number) of such **Gross Revenues** or other premium base during the whole or any specified part of the said period, and the Named Insured will furnish said statement within 10 days after request. The statement referred to will be subject to verification and audit by a duly authorized representative of the Company, who will have the right and opportunity to examine the books and records of the Named Insured as respects such **Gross Revenues** or other premium base, and such examination may be made at any time during the said period and within 3 years thereafter. The rendering of any estimate or statement or the making of any previous settlement will not bar the examination herein provided for or the Company's right to additional premium.

**J.  Inspection**

Any of the Company's authorized representatives will have the right and opportunity, whenever the Company so desires, to inspect at any reasonable time the **Insured's** products, goods, operations or premises, but the Company assumes no responsibility or duty by reason of such inspection or the omission thereof. The **Insured** agrees to provide appropriate personnel to assist the Company's representatives during such inspection without cost to the Company.

**K.  Action Against The Company**

1.  No action will lie against the Company unless, as a condition precedent thereto, the **Insured** will have fully complied with all of the terms and conditions of this Policy, nor until the amount of the **Insured's** obligation to pay has been fully and finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the Company.

**2.** Nothing contained in this Policy will give any person or organization any right to join the Company as a co-defendant in any action against the **Insured** to determine the **Insured's** liability. Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate will not relieve the Company of any of its obligations hereunder.

**L. Authorization**

By acceptance of this Policy, the first Named Insured stated in the Declarations will act on behalf of all **Insureds** with respect to:

**1.** Giving and receiving of all notices to and from the Company as provided herein;

**2.** Exercising of the Extended Reporting Period;

**3.** Cancellation of this Policy in whole or part;

**4.** Payment of premiums and Deductibles when due; and

**5.** Receiving of any return premiums that may become due under this Policy; and

all **Insureds** agree that such person or organization will act on their behalf.

**M. Spousal And Domestic Partner Coverage**

If a **Claim** made against an **Insured** individual includes a **Claim** against that **Insured** individual's lawful spouse solely by reason of:

**1.** Such spouse's status as the **Insured** individual's spouse; and

**2.** Such spouse's ownership interest in property from which the claimant seeks recovery for the **Insured** individual's **Wrongful Acts**;

all loss which such spouse becomes legally obligated to pay on account of such **Claim** will be treated for purposes of this Policy as loss which the **Insured** individual is legally obligated to pay on account of the **Claim** made against the **Insured** individual. Such loss will be covered under this Policy only if and to the extent that such loss would be covered under this Policy if incurred by the **Insured** individual. The coverage extension afforded by this subsection does not apply to any **Claim** alleging any **Wrongful Act** by the **Insured** individual's spouse. The term spouse as used in this section includes any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law in the United States of America.



# Markel Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)

It is agreed that:

**1.** This policy does not apply:

    **A.** Under any Liability Coverage, to bodily injury or property damage

        **(1)** with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        **(2)** resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    **B.** Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    **C.** Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

        **(1)** the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

        **(2)** the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

        **(3)** the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

**2.**   As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or by-product material;

"source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

   (a)   any nuclear reactor,

   (b)   any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

   (c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

   (d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

All other provisions of the policy shall remain unchanged.

**MEIL 5409 09 10**



# MARKEL INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TRADE OR ECONOMIC SANCTIONS

The following is added to this policy:

**Trade Or Economic Sanctions**

This insurance does not provide any coverage, and we (the Company) shall not make payment of any claim or provide any benefit hereunder, to the extent that the provision of such coverage, payment of such claim or provision of such benefit would expose us (the Company) to a violation of any applicable trade or economic sanctions, laws or regulations, including but not limited to, those administered and enforced by the United States Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms and conditions remain unchanged.



# MARKEL INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## GEORGIA AMENDATORY

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY INSURANCE COVERAGE FORM

**A.** Paragraph **D.** False Or Fraudulent Claims of Section **VIII** – Claims Reporting And Notice is replaced by the following:

> If any **Insured** will commit fraud in proffering any **Claim,** this insurance will not afford coverage as to such **Insured** from the date such fraudulent **Claim** is proffered.

**B.** Section **XI** – Other Conditions is amended as follows:

**1.** Paragraph **A.** is replaced by the following:

**A. Cancellation**

**1.** This Policy may be cancelled by the first Named Insured on behalf of all **Insureds** by mailing to the Company written notice stating when thereafter such cancellation will be effective. If by statute, regulation or contract this Policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, the Company will mail or deliver at least 10 days' notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation. The notice will state the effective date of cancellation, which will be the later of: 10 days from the date of mailing or delivering our notice, or the requested effective date of cancellation. If cancelled by the Named Insured, the earned premium will be computed at the customary short rate. Payment or tender of unearned premium will not be a condition precedent to the effectiveness of cancellation, but such payment will be made as soon as practicable.

**2.** This Policy may be cancelled by the Company by mailing to the first Named Insured, at the address stated in the Declarations, written notice stating when, not less than 30 days thereafter, such cancellation will be effective. If this Policy is in effect for 60 days or more, the Company may cancel for a reason other than nonpayment by mailing or delivering notice 45 days before the effective date of cancellation. However, if the Company cancels the Policy because the Named Insured has failed to pay a premium or Deductible when due, including premium or deductible(s) due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this Policy is a renewal or replacement, this Policy may be cancelled by the Company, by mailing a written notice of cancellation to the first Named Insured stating when, not less than 10 days thereafter, such cancellation will be effective. The mailing of notice as aforementioned will be sufficient notice and the effective date of cancellation stated in the notice will become the end of the **Policy Period**. Such notice will be conclusive on all **Insureds**. Delivery of such written notice to the first Named Insured by the Company will be equivalent to mailing. If cancelled by the Company, earned premium will be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The Company will send the first Named Insured any premium refund due.

**2.** Paragraph **E.** is replaced by the following:

**E. Other Insurance**

This insurance is in excess of the Deductible stated in the Declarations. If the **Insured** has insurance provided by other companies against Damages covered by this Policy, the Company shall not be liable under this Policy for a greater proportion of such Damages and Claims Expenses than the Limits of Liability stated in the Declarations bears to the total applicable limits of liability of all valid and collectible insurance against such Damages.

**3.** The following conditions are added:

**Nonrenewal**

If the Company decides not to renew this Policy, the Company will mail or deliver to the first Named Insured, at the address stated in the Declarations, written notice of nonrenewal, at least 45 days prior to the effective date of nonrenewal. Such notice will be conclusive on all **Insureds**. If notice is mailed, proof of mailing will be sufficient proof of notice.

**Increase Of Premium Or Change in Provisions**

If there is an increase to current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages) or a change to any policy provision which would limit or restrict coverage, the Company will mail or deliver to the first Named Insured, at the address shown in the Declarations, written notice of intent to increase the premium including dollar amount of the increase or change any policy provision, not less than 45 days thereafter, such premium increase or change in policy provision will be effective. If notice is mailed, proof of mailing will be sufficient proof of notice.

All other terms and conditions remain unchanged.