## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

MARKEL INSURANCE COMPANY,   :
               :
   Plaintiff,      :
               :
v.             :   CASE NO.: 1:23-CV-207 (LAG)
               :
RAY DEE CONLEY, *et al.*,    :
               :
   Defendants.     :
_____:

## ORDER

Before the Court is Defendant Ray Dee Conley's Motion for Summary Judgment (Doc. 32) and Plaintiff Markel Insurance Company's Motion for Default Judgment and Motion for Summary Judgment (Doc. 33). For the reasons below, Plaintiff's Motion for Default Judgment and Motion for Summary Judgment (Doc. 33) is **GRANTED in part** and **DENIED in part**, and Defendant's Motion for Summary Judgment (Doc. 32) is **DENIED**.

## BACKGROUND

This case concerns an insurance policy issued by Plaintiff Markel Insurance Company to Defendant Slate Consulting, LLC (Slate), a provider of agricultural consulting services for the planting, management and oversight of citrus groves, which is owned by Defendant Jason Goldman (Goldman).[1] (Doc. 1-1 ¶ 11). Plaintiff Markel issued Defendant Slate professional liability coverage with the policy number MEO-1290-03 (the Policy), with a policy period from July 19, 2021, to July 19, 2022. (Doc. 33-1 ¶ 13; Doc. 38-1 ¶ 13).

---

[1] The relevant facts are derived from the Parties' Statements of Material facts, responses thereto, and the record in this case. (*See* Docs. 32-2, 33-1, 37-1, 38-1). When evaluating the Motions for Summary Judgment, the Court "view[s] the facts in the light most favorable to the nonmoving party on each motion." *James River Ins. Co. v. Ultratec Special Effects Inc.*, 22 F.4th 1246, 1251 (11th Cir. 2022) (citing *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012)).

Defendant Ray Dee Conley (Conley) planted an eighteen-acre orange and grapefruit grove on his farm in Decatur County. (Doc. 33-1 ¶ 2; Doc. 38-1 ¶ 2). Defendant Conley retained Defendant Slate to provide agricultural consulting and scouting services. (Doc. 33-1 ¶ 5; Doc. 38-1 ¶ 5). Defendant Slate advised Defendant Conley on the care of the citrus grove and inspected the grove every month. (Doc. 33-1 ¶ 5; Doc. 38-1 ¶ 5; Doc. 1-1 ¶ 11–15). In April 2020, Defendant Conley planted approximately 2,490 citrus trees. (Doc. 32-3 ¶ 9). Defendant Golden was present and assisted with the planting. (*Id.*). Defendant Slate's scouting services included monthly inspections and regular reports from Defendant Golden on the status of the trees and recommendations for the care of the grove. (*Id.* ¶ 10). Defendant Conley paid Defendant Golden $250 per month for his monthly scouting services. (*Id.*). In April 2022, Defendant Golden scouted the grove and reported no issues. (*Id.* ¶ 13).

In May of 2022, Defendant Conley discovered that the citrus grove was infected by a disease known as "Citrus Canker," a bacterial disease that causes lesions on the leaves, twigs, and fruits of citrus plants. (Doc. 33-1 ¶ 7; Doc. 38-1 ¶ 7). As a result, Defendant Conley had to burn the infected trees. (Doc. 32-2 ¶¶ 14–15; Doc. 37-1 ¶¶ 14–15). As of September 25, 2024, the date of the filing of his Affidavit/Declaration, Defendant Conley had been forced to burn approximately 482 trees and faced the possibility of having to destroy and replant additional trees from the grove. (Doc. 32-2 ¶ 15; Doc. 37-1 ¶ 15). Moreover, the United States Department of Agriculture (USDA) quarantined Defendant Conley's citrus grove for a minimum of two years, which limits Defendant Conley's ability to market citrus products outside of the State of Georgia and impacts the sales price of any citrus products. (Doc. 32-2 ¶ 16; Doc. 37-1 ¶ 16). The cost to replant the entire grove is estimated at $1,245,000. (Doc. 33-1 ¶ 11; Doc. 38-1 ¶ 11).

Defendant Conley made a claim to Plaintiff Markel regarding the damage to the grove, and Plaintiff Markel sent an adjustor to the property. (Doc. 32-3 ¶¶ 21–22). After Plaintiff Markel and Defendant Conley failed to come to an agreement regarding the claim, Defendant Conley filed an action in the Superior Court of Decatur County on September 20, 2022, against Defendant Golden and Defendant Slate alleging that Defendant Golden's

and Slate's professional negligence was the substantial and primary factor causing the damage to the citrus grove. (Doc. 33-1 ¶ 10; Doc. 38-1 ¶ 10; *see* Doc. 1-1). In the underlying lawsuit, Plaintiff Markel alleges that, due to Defendant Golden and Defendant Slate's negligence, Defendant Conley is projected to sustain lost income in an aggregate amount of $8,907,250. (Doc. 33-1 ¶ 12; Doc. 38-1 ¶ 12; *see* Doc. 1-1). Plaintiff Markel currently is providing a defense for Defendants Golden and Slate Consulting in the underlying action under a full reservation of rights. (Doc. 33-2 at 3).

The Policy includes professional liability insurance coverage with a $1,000,000 limit for each claim and contingent bodily injury or property damage coverage with a $100,000 limit for each claim. (Doc. 1-2 at 9–10; Doc. 33-1 ¶¶ 13–14; Doc. 38-1 ¶¶ 13–14). Section II.A of the Policy describes the professional liability coverage as follows:

> The Company shall pay on behalf of the **Insured** all sums in excess of the Deductible stated in the Declarations, which the Insured becomes legally obligated to pay as **Damages** and **Claim Expenses** as a result of a **Claim** first made against the **Insured** and reported to the Company during the **Policy Period** or during the Extended Reporting Period, if applicable, but no later than 60 days after the expiration date of the **Policy Period** or Extended Reporting Period, if applicable, by reason of:
>
> **1.** A **Wrongful Act**; or
>
> **2.** A **Personal Injury**;
>
> in the performance of **Professional Services** rendered or that should have been rendered by the **Insured** or by any person or organization for whose **Wrongful Act** or **Personal Injury to** the **Insured** is legally responsible[.]

(Doc. 1-2 at 13). Claim expenses are the "reasonable and necessary amounts incurred by the Company, or by the **Insured** with the prior written consent of the Company, in defense of that portion of any **Claim** for which coverage is afforded under th[e] Policy." (*Id.* at 17). Damages are defined as "the monetary portion of any judgment, award or settlement, including punitive or exemplary damages to the extent insurable by law[.]" (*Id.*).

Section II.B.1 explains the coverage for contingent bodily injury and property damage stating in pertinent part:

> The Company shall pay **Contingent Bodily Injury And Property Damage** up to a limit of $100,000, or a higher limit if stated in the Declarations, per **Policy Period** including the Extended Reporting Period, if applicable, as the direct result of **Wrongful Acts** that occur during the **Policy Period**[.]

(*Id.* at 14). "Contingent Bodily Injury and Property Damage" includes "any actual or alleged **Bodily Injury** or **Property Damage** based upon or arising out of any **Wrongful Act** of the **Insured** in the performance of **Professional Services**." (*Id.* at 17). The policy defines "property damages" as "physical injury to, destruction of or contamination of tangible or intangible property, including all resulting loss of use of that property." (*Id.* at 19). Section IV of the Policy, states that the "policy does not apply to any **Claim**, Additional payment or Supplementary Payment . . . [b]ased upon, arising out of, or in any way involving . . .[a]ny actual or alleged **Bodily Injury** or **Property Damage**" aside from those allowed under Section II.B.1. (*Id.* at 20–22).

On December 4, 2023, Plaintiff Markel filed this action seeking "a declaration that [Markel's] duty to defend and indemnify [Defendant] Slate [Consulting] or otherwise pay for any damages, losses, costs or expenses arising out of the claims asserted against [Defendant] Slate [Consulting] by [Defendant] Conley in the Underlying Lawsuit is limited to $100,000" and that Plaintiff Markel "will not have any duty to indemnify [Defendant] Slate [Consulting] for the Underlying Lawsuit once the $100,000 Sublimit is exhausted by the payment of 'Damages' and/or 'Claim Expenses' under the Policy[.]" (Doc. 1 ¶ 34). Defendant Conley filed an Answer and a Counterclaim on January 13, 2024. (Doc. 9). The Court dismissed Defendant Conley's counterclaim on September 30, 2024. (Doc. 34).

Defendant Conley filed a Motion for Summary Judgment on September 25, 2024. (Doc. 32). Defendant Conley asks the Court to deny the declaratory relief requested by Plaintiff Markel and to issue a declaration that Plaintiff Markel has a duty to defend and indemnify Defendants Golden and Slate up to $1,100,000.00 under both the Professional Liability Coverage and Contingent Bodily Injury and Property Damages sections. (*Id.* at 1–2). Plaintiff Markel responded on October 30, 2024, and Defendant Conley did not reply. (Doc. 37; *see* Docket). Thus, the Motion is ripe for review. *See* M.D. Ga. L.R. 7.2.

Plaintiff Markel filed a Motion for Summary Judgment and Motion for Default Judgment on September 26, 2024. (Doc. 33). Plaintiff Markel seeks a declaration that it has no duty to defend or indemnify Defendants Golden and Slate in the underlying litigation beyond $100,000. (Doc. 33). Defendant Conley responded on October 30, 2024, and Plaintiff Markel replied on November 13, 2024. (Docs. 38, 40). The Motion is ripe for review. *See* M.D. Ga. L.R. 7.3.1(A).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where "the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (quoting Fed. R. Civ. P. 56(a)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (citing *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1311 (11th Cir. 2018) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004)). On a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party" and resolves factual disputes for the nonmoving party when doing so is supported by sufficient evidence. *Gogel*, 967 F.3d at 1134 (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (per curiam)); *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328 (11th Cir. 2020).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citation omitted); *Whitehead*, 979 F.3d at 1328 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant can meet this burden by presenting evidence

showing that there is no genuine dispute of material fact or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322–24; *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (per curiam) (citing *Clark v. Coats & Clark, Inc.*, 919 F.2d 604, 608 (11th Cir. 1991)). If the movant meets their initial burden, the nonmoving party must demonstrate that there is a genuine dispute for trial. *Whitehead*, 979 F.3d at 1328 (citing *Celotex*, 477 U.S. at 324). The nonmovant must "go beyond the pleadings and . . . present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating specific facts showing a genuine issue for trial." *Lamar v. Wells Fargo Bank*, 597 F. App'x 555, 557 (11th Cir. 2014) (per curiam) (citing *Celotex*, 477 U.S. at 324). "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. L.R. 56; *see Mason v. George*, 24 F. Supp. 3d 1254, 1260 (M.D. Ga. 2014).

Cross-motions for summary judgment may indicate the "non-existence of a factual dispute when" the motions "demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *United States v. Oakley*, 744 F.2d 1553, 1555–56 (11th Cir. 1984) (per curiam) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975)). Cross-motions, however, do not automatically warrant a "grant[ of] summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed[.]" *Id.* at 1555 (quoting *Bricklayers*, 512 F.2d at 1023). The Court must evaluate each motion for summary judgment separately because both parties, as movants, must establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Progressive Nw. Ins. v. Boyden*, No. 3:16-cv-010-WC, 2017 WL 1045061, at *3 (M.D. Ala. Mar. 17, 2017) (citations omitted).

**DISCUSSION**

## I.    Plaintiff Markel's Motion for Summary Judgment

Plaintiff Markel argues that it has "no duty to defend [Defendants] Slate or Golden for the Underlying Lawsuit because [Defendant] Conley's claims for 'property damage,' as defined by the Policy, are not covered under the Policy's Professional Liability Coverage [p]art and only covered under the Additional Payments part up to the limits of $100,000." (Doc. 33-2 at 12). "[U]nder Georgia law, the duty to defend an insured is separate and independent from the obligation to indemnify." *Elan Pharm. Rsch. Corp. v. Emps. Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998) (citing *Penn-Am. Ins. v. Disabled Am. Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997)). Because Plaintiff Markel requests a judgment regarding its coverage, which includes a duty to defend and a duty to indemnify, the Court must address each separately. (Doc. 1 at 11); *see Nat'l Builders Ins. v. RQ Bldg. Prods., Inc.*, 709 F. App'x 677, 678 (11th Cir. 2018) (per curiam) ("As [t]he duty to defend is separate and apart from the duty to indemnify, the district court should have separately addressed the duty to defend issues." (alteration in original) (internal citation marks omitted) (citation omitted)).

### A. Ripeness

Although no party raises the issue of ripeness, the Court *sua sponte* considers whether it has subject-matter jurisdiction over the claim for declaratory relief as "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *see also Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) ("[A] court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." (citations omitted)). As a preliminary matter, the Court considers whether Plaintiff Markel's duties to defend and indemnify under the Policy are ripe for review.

"Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review." *Digit. Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997)

(citations omitted). "The ripeness inquiry requires a determination of (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Id.* (first citing *Abbott Lab v. Gardner*, 387 U.S. 136, 149 (1967); and then citing *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995)). "Courts must resolve 'whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court.'" *Id.* (quoting *Cheffer*, 55 F.3d at 1524).

"Courts have recognized a controversy exists regarding the duty to defend when the insured seeks a defense from an insurance company, but the insurance company denies that it is obligated." *State Farm Fire & Cas. Co. v. Myrick*, No. 2:06-cv-359-WKW, 2007 WL 3120262, at *2 (M.D. Ala. Oct. 23, 2007) (citing *Am. Fid. & Cas. Co. v. Pa. Threshermen & Farmers' Mut. Cas. Ins.*, 280 F.2d 453, 461 (5th Cir. 1960)); *see also AutoOwners Ins. v. Tabby Place Homeowner's Ass'n*, 637 F. Supp. 3d 1342, 1358–59 (S.D. Ga. 2022) (explaining the same). Here, Plaintiff Markel is defending Defendants in the underlying state court action, which indicates that Defendants have sought coverage. To the extent that Plaintiff Markel is asserting that it does not have a duty to defend under the professional liability coverage section of the policy, there is a controversy. Moreover, the issue is of "sufficient concreteness to evidence ripeness." *Digit. Props., Inc.*, 121 F. 3d at 589.

The Eleventh Circuit has come to varying conclusions regarding the ripeness of an insured's claim regarding the duty to indemnify. *See Cincinnati Ins. v. Holbrook*, 867 F.2d 1330, 1333 (11th Cir. 1989), *abrogated on other grounds*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 281–82, 289 (1995); *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019). Of these cases, *Mid-Continent Cas. Co.*, which focuses specifically on the duty to indemnify, rather than the general issue of coverage, is most instructive for this analysis. When considering the duty to indemnify, the Court considers the ultimate resolution of the claims that may be subject to change based on the course of the litigation and, importantly, the facts uncovered in the discovery process. *See Nat'l Tr. Ins. v. Taylor & Sons, Inc.*, No. CV 319-067, 2021 WL 2346109, at

*5 (S.D. Ga. June 8, 2021) (explaining that "declining to decide the question of the duty to indemnify will ensure that the factual record is fully developed and avoid the possibility of determining coverage when a judgment establishing liability may never be reached in the underlying case." (citing *Edwards v. Sharkey*, 747 F.2d 684, 686 (11th Cir. 1984) (per curiam)).  The Eleventh Circuit again recently held that "a declaratory judgment claim with respect to indemnification is generally not ripe until (and if) the insured has been held liable to a third party." *Sullivan v. Everett Cash Mut. Ins.*, No. 19-11943, 2023 WL 1521579, at *4 (11th Cir. Feb. 3, 2023) (per curiam) (citing *Mid-Continent Cas. Co.*, 766 F. App'x at 770 (collecting cases)) (other citations omitted). Accordingly, as "an insurer's duty to indemnify is not ripe until the underlying lawsuit is resolved or the insured's liability is established[,]" the question of Plaintiff's duty to indemnify is not ripe. *Mid-Continent Cas. Co.*, 766 F. App'x at 770.

### B. Duty to Defend

The question of whether Plaintiff Markel has a duty to defend its insureds "is separate and independent from the issue of whether [Plaintiff Markel] would be required to indemnify the [i]nsureds for any damages recovered against them in [the underlying] action, because an insurer's duty to defend is broader than its duty to indemnify." *Shafe v. Am. States Ins. Co.*, 653 S.E.2d 870, 873 (Ga. Ct. App. 2007) (citation omitted).  Plaintiff Markel contends that its duty to defend is limited to $100,000 as provided under the Contingent Bodily Injury and Property Damage provision because the damage to the citrus grove is property damage which specifically is excluded under the Professional Liability Coverage provision. (Doc. 33-2 at 8–11). Thus, Plaintiff Markel argues that it has no duty to defend Defendants Golden and Slate under the Professional Liability Coverage provision, which provides for $1,000,000 in coverage. (*Id.*). Plaintiff Markel points to Section IV.C.10 of the Policy which sets forth Exclusions and explicitly states that the Policy "does not apply to any Claim . . . [b]ased upon, arising out of, or in any way involving . . . actual or alleged Bodily Injury or Property Damage," as well as the provision which states  that the exclusion does not apply to Section II. B of the Policy—the Contingent Bodily Injury and Property Damage provision. (Doc. 1-2 at 20–22). Plaintiff

Markel also notes the Policy's definition of property damage—"physical injury to, destruction of or contamination of tangible or intangible property, including all resulting loss of use of that property"—and argues that the citrus crop is tangible property as it was "physically injured, destroyed, and/or contaminated by citrus canker." (*Id.* at 19; Doc. 33-2 at 10). Thus, according to Plaintiff Markel, the Policy should be interpreted to exclude coverage for the damage to the grove pursuant to the professional liability coverage provisions and limit any liability to the $100,000 allowed under the property provision.

Defendant Conley, on the other hand, argues that the Policy should be interpreted to provide "per claim coverage . . [of] $1,000,000, while additional property damages (such as those of a more 'contingent' and attenuated nature which do not directly flow from the covered professional omissions) are covered up to an additional or supplemental $100,000 limit." (Doc. 32-1 at 15–16). Defendant Conley does not dispute that the exclusion language is part of the policy or that the damage to the citrus trees falls within the definition of property damage, but Defendant Conley argues that Plaintiff Markel's proposed interpretation renders the Professional Liability Coverage meaningless because "[a]ny failure by [Defendants] Slate . . . and . . . Golden in rendering negligent professional services to [Defendant] Conley's citrus grove would most certainly be measured in terms of damages sustained by the citrus plants." (Doc. 38 at 4).

Under Georgia law, "[i]t is well settled that insurance policies, even when ambiguous, are to be construed by the court, and no jury question is presented unless an ambiguity remains after application of the applicable rules of contract construction." *Am. S. Ins. Co. v. SPN Trans*, LLC, 858 S.E.2d 558, 562 (Ga. Ct. App. 2021) (alteration in original) (quoting *First Fin. Ins. Co. v. Am. Sandblasting Co.*, 477 S.E.2d 390, 391–92 (Ga. Ct. App. 1996)). Furthermore, "[b]ecause insurance policies are contracts of adhesion, drawn by the legal draftsman of the insurer, they are to be construed as reasonably understood by an insured." *Id.* (quoting *First Fin.l Ins.*, 477 S.E.2d at 392). Thus, "[e]xceptions, limitations, and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear

and explicit terms." *Id.* (quoting *First Fin. Ins.*, 477 S.E.2d at 392). An exclusion that "is plain and unambiguous[, however] binds the parties to its terms and must be given effect, even if beneficial to the insurer and detrimental to the insured." *Garland, Samuel & Loeb, P.C. v. Am. Safety Cas. Ins. Co.*, 651 S.E.2d 177, 179 (Ga. Ct. App. 2007). "[A] provision of an insurance contract [is ambiguous if it] is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable[.]" *SPN Trans, LLC*, 858 S.E.2d at 562 (quoting *Am. Strategies Ins. Co. v. Helm*, 759 S.E.2d 563, 565 (Ga. Ct. App. 2014)). "[U]nless the Policy itself indicates that a term is used in an unusual sense, [Georgia courts] attribute to that term its usual and common meaning." *Taylor Morrison Servs. Inc. v. HDI-Gerling Am. Ins. Co.*, 746 S.E.2d 587, 590 (Ga. 2013) (citations omitted).

"To ascertain an insurer's duty to defend, [a court] first examine[s] the allegations of the complaint in conjunction with the relevant policy language 'to determine whether a liability covered by the policy is asserted.'" *Shafe*, 653 S.E.2d at 873 (citations omitted). In the underlying complaint, Defendant Conley alleges that the citrus grove was infected with Citrus Canker due to Defendant Slate and Golden's professional negligence and incompetence. (Doc. 1-1 ¶ 16). As a result, Defendant Conley alleges that he has had to burn approximately 482 trees and that eventually the entire grove will have to be destroyed. (Doc. 32-2 ¶ 15; Doc. 37-1 ¶ 15). Plaintiff Markel further alleges that Defendant Golden may have introduced the infection to his grove by failing to take actions to avoid transmission from other groves that he inspected. Defendant Conley seeks compensatory damages for the cost of replanting and lost income. (Doc. 1-1 ¶ 19). The Policy excludes coverage under the professional liability provision for claims "arising out of" property damage or bodily injury and defines property damage as "physical injury to, destruction of or contamination of tangible or intangible property, including all resulting loss of use of that property." (Doc. 1-2 at 19).

As was the case in *Dynamic Cleaning Serv., Inc. v. First Fin. Ins. Co.*, 430 S.E. 2d 33 (Ga. Ct. App. 1993), while the complaint alleges that Defendants were negligent and incompetent in providing their professional services, the injuries giving rise to the claim—

the canker infection and resulting loss of the tress and related income—are clearly based on the contamination and destruction of tangible property—the citrus trees. The relevant question for the Court "is not whether [Plaintiff] is liable for [Defendant's] injuries, but whether [the policy] protects [Defendant Conley] against the type of harm that occurred." *Manning v. USF&G Ins. Co.*, 589 S.E.2d 687, 688 (Ga. Ct. App. 2003) (citation omitted) (concluding that motor vehicle exclusion applied because injuries arose out of automobile accident even though the insured's conduct involved improperly serving minors in her home). It does not. The Policy clearly states that claims arising out of property damage are subject to the coverage limit of $100,000 per claim. (Doc. 1-2 at 20, 22). The explicit limitation on claims arising out of property damage does not render the $1,000,000 professional liability insurance meaningless. Contrary to Defendant Conley's assertion, Property damage is not the only basis under which a client of agricultural consulting services conceivably could seek to file a professional negligence claim against the consultant. (*See* Doc. 1-2). As noted by Plaintiff Markel, "a professional's recommendation of and client's subsequent use of an ineffective pesticide that did not physically damage the crops but resulted in a reduction in yield produced and the amount harvested" would be covered under the Professional Liability section but not the Contingent Bodily Injury or Property Damage Section. (Doc. 40 at 4). The clear language of the policy limits coverage for the property damage involved in this case to $100,000. "Though exclusions in insurance policies are strictly construed against the insurer, one that is plain and unambiguous binds the parties to its terms and 'must be given effect, even if beneficial to the insurer and detrimental to the insured.'" *Manning*, 589 S.E.2d at 688 (citations omitted). Plaintiff Markel is entitled to summary judgement to the extent that Plaintiff Markel seeks a declaration that it has no duty to defend Defendants in the underlying litigation beyond the $100,000 policy limit on claim expenses.[2]

---

[2]     While the duty to indemnify is not before the Court, the Court notes that "if an insurer does not have a duty to defend a claim, it will likewise not be required to indemnify the insureds if they are ultimately held liable for that claim." *See e.g.*, *Elite Integrated Med., LLC v. Hiscox, Inc.*, 553 F. Supp. 3d 1307, 1314 (N.D. Ga. 2021) (internal quotation marks and citations omitted), *aff'd* 2023 WL 1740098 (11th Cir. May

## II.    Defendant Conley's Motion for Summary Judgment

Defendant Conley asks the Court to deny the declaratory relief requested by Plaintiff Markel and to issue a declaration that Plaintiff Markel has a duty to defend and indemnify Defendants Golden and Slate up to $1,100,000.00 under both the Professional Liability Coverage and Contingent Bodily Injury and Property Damages sections. (Doc. 32 at 1–2). As discussed above, the question of whether Plaintiff Markel has a duty to indemnify is not ripe and not properly before this Court; but the Parties agree that Defendant has a duty to indemnify and defend under the Policy up to $100,000 under the Contingent Bodily Injury and Property Damage section to the Policy. (*See* Docs. 32, 33). Moreover, as discussed above, the relevant question in determining Plaintiff Markel's duty to defend under the Policy is "whether [the Policy] protects [Defendant Conley] against the type of harm that occurred." *Manning* 589 S.E.2d at 691. The damage to Defendant Conley's citrus trees constitutes property damage as defined by the policy, and the unambiguous language of the Policy excludes coverage for property damage under the Professional Liability Coverage provision.    Accordingly, Defendant Conley is not entitled to summary judgement.

## DEFAULT JUDGMENT

Plaintiff Markel seeks a default judgment against Defendants Golden and Slate. (Doc. 33). Thus, the Court must determine whether to apply its ruling on the Motion for Summary Judgment to these two absent defendants. District courts may enter judgment by default against a defendant that fails "to plead or defend[.]" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) (per curiam) (citing Fed. R. Civ. P. 55(b)(2)). Prior to obtaining a default judgment, the plaintiff seeking judgment must first seek an entry of default. *See* Fed. R. Civ. P. 55(a). The Clerk's Office filed the entry of default in this case against Defendants Golden and Slate on September 23, 2024. (*See* Docket). The mere entry of default by the Clerk, however, "does not in itself warrant the [C]ourt in entering a default judgment." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200,

---

31, 2022); *All State Ins. Co. v. Harkleroad*, No. 409CV011, 2010 WL 2076941, at *3 (S.D. Ga. May 24, 2010).

1206 (5th Cir. 1975); *Stegeman v. Georgia*, 290 F. App'x 320, 323 (11th Cir. 2008) (per curiam).

The Eleventh Circuit has a "strong policy of determining cases on their merits," so "default judgments are generally disfavored." *Surtain*, 789 F.3d at 1244–45 (quoting *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003)). Default judgment is appropriate only when the pleadings contain "a sufficient basis" for the judgment such that they could "survive a motion to dismiss for failure to state a claim." *Id.* at 1245 (citation omitted). "[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* (alteration in original) (quoting *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005)).

### A. Jurisdiction

When "considering any default judgment, the Court must [also] consider (1) jurisdiction, (2) liability, and (3) damages." *Johnson v. Rammage*, No. 5:06-CV-057 (CAR), 2007 WL 2276847, at *1 (M.D. Ga. Aug. 7, 2007) (citing *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004)). The Court will first consider jurisdiction and then evaluate the sufficiency of Plaintiff Markel's Complaint. Considering jurisdiction, the Complaint establishes that the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interests and costs. (Doc. 1 ¶¶ 2–8). Plaintiff Markel is an Illinois corporation with its principal place of business in Virginia. (*Id.* ¶ 2). Defendants Golden and Conley are citizens of Georgia and Defendant Slate is a limited liability company organized in the State of Georgia with its principal place of business in Georgia. (*Id.* ¶¶ 3–5). Furthermore, "when an insurer seeks a judgment declaring the absence of liability under a policy, the value of the declaratory relief to the plaintiff-insurer is the amount of potential liability under its policy." *First Mercury Ins. Co. v. Excellent Computing Distributors, Inc.*, 648 F. App'x 861, 864–65 (11th Cir. 2016) (per curiam) (citation omitted). Here, in the state court action Defendant Conley seeks $10,152,250.00 in damages, Plaintiff Markel

seeks to limit any recovery to the $100,000 limit under the Contingent Bodily Injury and Property Damage provision. Thus, the amount in controversy exceeds $75,000.

The Complaint also establishes that the Court has personal jurisdiction over Defendants Golden and Slate. (*See* Docs. 4–16, 20). According to the well-pleaded facts of the Complaint Defendant Golden resides in Georgia and Defendant Slate is organized in and maintains its principal place of business in Georgia. (Doc. 1 ¶¶ 4–5). Accordingly, this Court has subject-matter jurisdiction and personal jurisdiction in this case.

### B. Sufficiency of Pleadings

As a result of Defendant Slate and Golden's failure to respond and the Clerk's entry of default, the following well-pleaded allegations in Petitioner's Complaint are accepted as true. *See Surtain*, 789 F.3d at 1245. The material facts are not in dispute. Rather, the issue before the Court is a matter of contract interpretation—essentially a legal conclusion. As discussed above, the exclusion in the Policy applies to Defendant Conley's claims for professional negligence because they arise out of "alleged . . . property damage"—the contamination of the citrus grove. (Doc. 1-1; Doc. 1-2 at 17). Plaintiff Markel must defend Defendant Slate up to the $100,000.00 under the Contingent Bodily Injury and Property Damage provision of the Policy.

Entry of default judgment against Defendants Slate and Golden is appropriate under Rule 55, given Defendants' failure to appear after service of process and the sufficiency of the Complaint's well-pleaded factual allegations. *See, e.g.*, *Progressive Mountain Ins. v. Kimbler*, No. 5:12-CV-274 (MTT), 2012 WL 5335835, at *2 (M.D. Ga. Oct. 26, 2012) (granting the petitioner's motion for default judgment in a declaratory judgment action when "[t]he application of either exclusion could limit [the petitioner insurer's] liability"); *Progressive Premier Ins. Co. of Ill. v. Cornish*, No. 5:18-cv-00304-TES, 2019 WL 1966118, at *2 (M.D. Ga. May 2, 2019); *Allstate Ins. v. Chapman*, No. 1:11-CV-166 (WLS), 2013 WL 5781665, at *3 (M.D. Ga. Oct. 25, 2013).

### C. Costs

Plaintiff Markel also seeks judgment "[f]or the cost of this suit[,]" but Plaintiff did not submit any evidence to support an award of costs. (Doc. 1 ¶ 34). Pursuant to Rule

54(d)(1), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). If Plaintiff Markel is still seeking costs, Plaintiff Markel shall file a motion for costs, accompanied by evidence that supports such costs. Plaintiff Markel's motion for costs is due by Thursday, October 16, 2025.

## CONCLUSION

Accordingly, Plaintiff Markel's Motion for Summary Judgment and Default Judgment is **GRANTED in part** and **DENIED in part** and Defendant's Motion for Summary Judgment is **DENIED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Markel.

**SO ORDERED**, this 25th day of September, 2025.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**